### THOMPSON et al. v. SMITH et al.

No. 13814—Opinion Filed Dec. 11, 1923.

Rehearing Denied May 13, 1924.

(Syllabus.)

**1. Appeal and Error—Harmless Error—Refusal of Jury Trial.**

In an action to recover specific real property and for accounting for rents and profits, issues of fact arising from the pleadings shall be tried by a jury, unless a jury is waived, but the error of the court in refusing a jury trial is harmless when the trial court determines the issues of facts in favor of the party demanding a jury.

**2. Appeal and Error—Review—Findings.**

The rule is well established in this jurisdiction that if the findings of fact made by the trial court are reasonably supported by the evidence, the judgment entered thereon will not be disturbed on appeal in this court.

**3. Same—Existence of Common-Law or Custom Marriage.**

Where the evidence introduced by the plaintiff in support of his claim that the relation of husband and wife existed between plaintiff and deceased only tends to show that the plaintiff occasionally cohabited with the deceased during her lifetime, held, the finding of the trial court that the marriage relation did not exist will not be disturbed. For on such an issue the ultimate conclusion to be reached is not whether the decedent lived and cohabited with the plaintiff, but whether there was a contract of marriage.

**4. Descent and Distribution—Inheritance by Those of Half Blood—Statutes.**

Section 8427, Revised Laws 1910 (section 11310, Comp. Stat. 1921), provides: "Kindred of the half blood inherit equally with those of the whole blood in the same degree,

unless the inheritance come to the intestate by descent, devise or gift of some of his ancestors, in which case all those who are not of the blood of such ancestors must be excluded from such inheritance." Held, said section qualifies the general rule as to inheritance by those of the half blood found in second subdivision of section 8418, Revised Laws 1910 (section 11301, Comp. Stat. 1921), and the half blood is excluded from an inheritance that came to the deceased by descent, devise, or gift of some one of his ancestors, and that the rule announced in Kelly v. McGuire, 15 Ark. 586, be followed.

### 5. Statutes — Construction — Statutes Adopted from Other States.

While it is the general rule that the Legislature of one state, in adopting a statute of another state, is presumed to have adopted the construction placed on such statute by the highest court of such other state prior to its adoption, yet this rule has its exceptions: First, where the construction is contrary to the Constitution or the well-defined legislative policy of the adopting state; second where the adopted statute exists in many other states and such construction is contrary to the decided weight of authority in such other states having substantially the same statute.

### 6. Indians — Approval of Conveyances of Restricted Heirs—Proper Court.

According to the provisions found in the proviso to section 9 of the act of Congress of May 27, 1908, the county court having jurisdiction of the settlement of the estate of the original deceased allottee is the proper court, acting as a designated federal agency, to approve the conveyance of restricted heirs, whether such heirs inherited immediately or indirectly such lands..

Error from District Court, Creek County; Lucien B. Wright, Judge.

Action by James Thompson and Albert Lock (or Jones) against Florence Smith et al. to recover possession of lands allotted to Manie Steel, full-blood Creek Indian, and for accounting of rents and profits. Judgment for defendants. Plaintiffs bring error. Affirmed.

E. J. Van Court, for plaintiffs in error.

Chastain, Harris & Young, Alvin Richards, and Geo. S. Ramsey, for defendants in error.

KENNAMER, J. This is an action brought by James Thompson and Albert Lock (or Jones) to cancel certain deeds and oil leases in so far as they affect their title to certain lands in Creek county, Okla., for possession of same and for an accounting for oil and gas removed therefrom. Hereinafter, for convenience, plaintiffs in error and defendants in error will be referred to as plaintiffs and defendants, this being the relation in which they stood in the trial court.

It is admitted by all parties that the land in controversy was the allotment of one Manie Steel, a full-blood Creek Indian; that certificate of selection was issued while the Creek law was in force; that Manie Steel died in what is now McIntosh county, Okla., leaving surviving her a daughter, Minnie Thompson; that Minnie Thompson died in 1911, in Okmulgee county, leaving surviving her a husband, A. D. Tiger.

Both plaintiffs are full-blood citizens of the Creek Nation. Plaintiff Lock, whose Indian name is Lock and English name Jones, claims that he was the husband of the allottee; that she died early in the year 1902, prior to the putting in force of the Arkansas law of descent; hence, he inherits a one-half interest in the land.

Plaintiff Thompson claims that he is the half-brother of Minnie Thompson, the deceased daughter of the allottee, and that at the death of his sister he inherited, under the Oklahoma law, a one-half interest in her estate, the other one-half going to her husband, A. D. Tiger.

Defendant Smith claims title in fee to said lands, and the defendant oil companies are operating under leases from her. Defendants deny that plaintiff Lock was the husband, and contend that even were he such husband, the allottee died under the Arkansas law, and as there was no issue of this marriage, he would take nothing. Defendant Smith based her title upon a deed from A. D. Tiger, a half-blood Indian, and a deed from plaintiff James Thompson, a full-blood Indian, the last named deed being approved by the county court of Okmulgee county.

The trial court made the following findings of fact and conclusions of law.

"The court finds that the land involved in this action * * * was the allotment of Manie Steel, or Mearne, a full-blood Creek Indian.

"The court further finds that the allottee, Manie Steel, died intestate in what is now McIntosh county, Okla., some time in the early part of the year 1902, and prior to June 30, 1902, and left surviving her as her sole and only heir at law, a daughter, Minnie Thompson, by a former husband, Hardy Thompson; that thereafter and on January 4, 1911, said Minnie Thompson died intestate in Okmulgee county, Okla., and that said Minnie Thompson left surviving her no father, mother, nor any descendant, and that no relative existed except James Thompson, a half-brother, a son of Hardy

Thompson, and the husband of Minnie Thompson, A. D. Tiger.

"The court further finds that Albert Jones, or Albert Lock, was not the husband of the allottee, Manie Steel, or Mearne, and that whatever relationship existed between them was a meretricious relationship.

"The court holds as a conclusion of law that the plaintiff James Thompson, the half-brother of Minnie Thompson, not being of the blood of the allottee, Manie Steel, or Mearne, is barred from inheritance of the lands of Manie Steel, or Mearne, and takes nothing in this action.

"The court further holds as a conclusion of law that the county court of McIntosh county was the court having jurisdiction of the settlement of the estate of Manie Steel, or Mearne, deceased; and that the county court of Okmulgee county was the court having jurisdiction of the settlement of the estate of Minnie Thompson, deceased; and in the event that James Thompson had an inheritable interest in the allotment of Manie Steel, or Mearne, deceased, that the county court of Okmulgee county was the court having jurisdiction to approve any conveyance executed by the said James Thompson.

"The court further holds as a conclusion of law that the plaintiff Albert Jones, or Albert Lock, having never entered into a marriage relation with the allottee, Manie Steel, or Mearne, is barred from inheritance thereof, or any part thereof, and that judgment herein should be for the defendants."

Motion for new trial was filed and overruled. Plaintiffs perfected this appeal, and upon the assignment of errors seek to reverse the judgment.

In the trial court the following questions were at issue:

As to plaintiff Lock: (1) Under which law, the Creek of the Arkansas, did the allottee die? (2) Was this plaintiff her husband?

As to plaintiff Thompson: (1) Does section 8427 of the 1910 Revised Laws of Oklahoma preclude this plaintiff from inheriting? (2) Which county court had jurisdiction of the approval of the deed of James Thompson, the court having jurisdiction of the estate of the allottee or the one having jurisdiction of the estate of Minnie Thompson?

The assignment of errors challenges the correctness of the trial court's judgment and presents the questions as above set out here for review.

Before disposing of the questions as above set out, counsel for the plaintiffs in his brief contends that the case was one of purely equitable cognizance and that the rule to be applied in weighing the testimony is as to whether the findings and judgment of the court are clearly against the weight of the evidence. We are of the opinion that the case was not one of purely equitable cognizance, but was primarily an action in ejectment to recover possession of specific real property, and as an incident to the relief to recover the rents and profits arising from the land during the time the defendants had been in what plaintiffs alleged to be the unlawful possession thereof. Under the rule announced in the case of Gill et al., Adm'rs, v. Fixico et al., 77 Okla. 151, 187 Pac. 474; Strawn v. Brady, 84 Okla. 66, 202 Pac. 505, and Childs v. Cook, 68 Okla. 240, 174 Pac. 274, the issues of fact raised by the pleadings were proper questions for a jury, unless a jury was waived by the parties. In the first case, supra, it was held:

"Issues of fact, arising in actions for the recovery of specific real property, shall be tried by a jury, unless a jury is waived; and it is error for the court to refuse a jury in such action upon proper demand therefor."

In the instant case, however, the error committed by the trial court in refusing the defendants a jury trial was harmless in view of the fact that the trial court decided the case in favor of the defendants. The only purpose in passing upon the question is to determine the rule of law applicable to the case as to what weight should be given the findings of fact by the trial court. The rule is well established in this jurisdiction that if the findings of fact made by the trial court are reasonably supported by the evidence, the judgment entered thereupon will not be disturbed on appeal in this court. Cherry v. Watson, 88 Okla. 54, 211 Pac. 79; Oklahoma, K. & M. Ry. Co. v. Hurst, 86 Okla. 177, 207 Pac. 86; Jackson v. Bates, 69 Okla. 141, 170 Pac. 897.

We have carefully examined the testimony, and it is our conclusion that the findings of fact of the trial court are amply supported by the evidence.

On the question of whether or not the plaintiff Lock was ever the husband of Manie Steel, it is quite clear from the evidence that the trial court was justified in reaching the conclusion, considering the plaintiff Lock's evidence in its most favorable light, that he only occasionally visited the home where Manie Steel resided. There is an entire absence of testimony that he entered into a contract of marriage with Manie Steel. Another significant fact that the trial court was justified in considering is that the plaintiff Lock for 19 years or more after the death of Manie Steel never made

any claim whatsoever to the land in controversy, and the reasonable inference to be drawn from this fact is that he did not bear the relation of husband to Manie Steel on the date of her death. In determining whether or not there was a marriage, the ultimate conclusion to be reached is not-whether the decedent and the plaintiff lived and cohabited together, but whether there was a contract of marriage. In re Estate of Hutell (Minn.) 34 L. R. A. 384. Having reached this conclusion the plaintiff Lock is eliminated .r. m the case.

The next question raised is whether, according to the provision of section 8427, Revised Laws 1910 (11310, Comp. Stat. 1921), the trial court erred in holding that the husband of Minnie Thompson (only heir to the allotment of Manie Steel, deceased) took the whole estate to the exclusion of James Thompson, paternal half-brother of Minnie Thompson. The section reads:

"Kindred of the half blood inherit equally with those of the whole blood in the same degree, unless the inheritance come to the intestate by descent, devise or gift of some one of his ancestors, in which case all those who are not of the blood of such ancestors must be excluded from such inheritance."

It is admitted by the parties that Minnie Thompson, who was the child of Manie Steel, the deceased allottee, inherited the whole allotment, in view of the conclusion reached that Lock was not the husband of Manie Steel on the date of her death, and that on the date of her death she left neither father nor mother, whole brother nor sister, uncle nor aunt, nor other near relatives, with the exception of her half-brother, James Thompson.

It is also admitted that James Thompson was not of the blood of the deceased ancestor, Manie Steel, from whom Minnie Thompson inherited the allotment. It is the contention of the defendants that, on the death of Minnie Thompson, on January 4, 1911, in Okmulgee county, Okla., according to the provisions of section 8418, subdivision 2, Revised Laws 1910 (section 11301, Comp. Stat. 1921), A. D. Tiger, husband of Minnie Thompson, inherited the whole allotment. Plaintiff James Thompson contends that Tiger only inherited an undivided one-half interest in said property and James Thompson, half-brother of the deceased Minnie Thompson, the other one-half. The contention of counsel for the plaintiff Thompson is supported by the following cases: In re Smith's Estate, 131 Cal. 433, 63 Pac. 729, 82 Am. St. 358: In re Pearson's Estate, 110 Cal. 524, 42 Pac. 960; Rowley v. Stray, 32 Mich. 75; In re Belshaw's Estate (Cal.) 212 Pac. 13.

Section 8427 of the statutes, supra, is identical with the statute construed by the California cases, and came to this state from South Dakota by adoption by the Oklahoma Territorial Legislature, and was in force prior to statehood in that part of this state comprising Oklahoma Territory. It was extended in force throughout the entire state under the Enabling Act and the adoption of the Constitution of the state. Section 8427, supra, is also identical in material parts to section 2533 of Mansfield's Digest of the Laws of Arkansas, which was in force in the Indian Territory for 17 years prior to the admission of Oklahoma into the Union. The following cases support the rule as contended by the defendants that, according to the provisions of 8427, supra, the plaintiff James Thompson, not being of the blood of Manie Steel, the deceased ancestor, from whom Minnie Thompson inherited the allotment, is excluded from inheriting any part of the allotment. In re Kelly's Heirs v. McGuire, 15 Ark. 92; Amy v. Amy, 12 Utah, 278, 42 Pac. 1121; Delaplaine v. Jones, 8 N. J. L. 340; Stallworth v. Stallworth, 29 Ala. 76; Cutter v. Waddingham, 22 Mo. 206; Beebee v. Griffing, 14 N. Y. 235; Osborne v. Weidenhouse. 56 N. C. 238; Prescott v. Carr, 29 N. H. 453, 61 Am. Dec. 652. .

In the case of In re Smith's Estate, supra, the court held:

"By Civ. Code, sec. 1394. 'kindred of the half blood inherit equally with those of the whole blood in the same degree, unless the inheritance comes to the intestate by descent, devise, or gift of some one of his ancestors, in which case all those who are not of the blood of such ancestor must be excluded from such inheritance.' Held, that in the excepted case thereunder the kindred of the half blood were not absolutely excluded from inheriting, but merely postponed to those of the whole blood, and that the provision had no application between kindred in different degrees."

The effect of the holding in this case and of the other cases supporting this rule is that the applicable provisions of section 8427, supra, have no application to the devolution of an estate of a deceased person where the estate came to such decedent by inheritance, devise, decent, or gift of some one of his ancestors, except where there are those of the full blood and the one-half blood. That is to say, where the decedent leaves one-half brothers or sisters, but no full brothers or sisters, the statute does not become operative. We believe that the rule followed in the California cases is against the weight of authority and places an artificial construction upon the plain language of section 8427 of the statute, supra, and fails to recognize

the legislative intent deducible from the language used in the statute.

In the case of In re Smith's Estate, supra, the conclusion reached was upon the theory that such statutes as 8427 are regarded as enabling laws conferring upon kindred of the one-half blood a right of inheritance not theretofore enjoyed equally with those of the whole blood. This was the common-law rule. 1 Cooley's Blackstone (4th Ed.) p. 614. We are unable to agree with this reasoning to support the conclusion reached. Under section 8418, subdivision 2, Revised Laws 1910, those of the one-half blood inherit equally with those of the whole blood for the reason that where the statute refers to brothers and sisters of the decedent, the same is held to include one-half brothers and one-half sisters in determining their right to inherit. Stockton v. Frazier, 81 Ohio St. 227. Therefore, it is plain that instead of section 8427 being an enabling statute, it must be construed to be a qualification of the general rule in the preceding section 8418, and where the one-half blood would inherit equally with those of the whole blood as provided for in the general rule found in second subdivision of section 8418, where such an estate came to the deceased from one of his or her deceased ancestors by inheritance, devise, or gift, section 8427 qualifies and restricts the right of those of the one-half blood to inherit such estate and excludes them if they are not of the blood of the ancestor from whom the last decedent received the estate by inheritance, devise, or gift.

It is important to observe in the construction of section 8427 that according to the second subdivision of 8418, providing:

"If the decedent leave no issue, the estate goes one-half to the surviving husband or wife, and the remaining one-half to the decedent's father or mother, or, if he leave both father and mother, to them in equal shares; but if there be no father or mother, then said remaining one-half goes, in equal shares, to the brothers and sisters of the decedent, and to the children of any deceased brother or sister, by right of representation. If decedent leave no issue, nor husband nor wife, the estate must go to the father or mother, or if he leave both father and mother, to them in equal shares: Provided, that in all cases where the property is acquired by the joint industry of husband and wife during coverture, and there is no issue, the whole estate shall go to the survivor, at whose death, if any of the said property remain, one-half of such property shall go to the heirs of the husband and one-half to the heirs of the wife, according to the right of representation"

—this provision of the statute provides the general rule for inheritance by brothers and sisters, and the phrase "brothers and sisters," as used in this provision of the statute, includes one-half brothers and one-half sisters. Watkins v. Blount, 43 Tex. Civ. App 460, 94 S. W. 1116; Stockton v. Frazier. 81 Ohio St. 227, 26 L. R. A. (N. S.) 603, 90 N. E. 168. It therefore must be clear that section 8427 was not an enabling statute, but is a qualification of the general rule as found in section 8418.

This court in the case of Edmond McKay v. Mattie Roe, a minor, No, 11851, in which an opinion was filed September 25, 1923, 96 Okla. 87, 219 Pac. 921, held:

"A careful consideration of the Oklahoma statutes of descent and distribution discloses the statutes are founded on natural affection of the heart, so as to let the estate of deceased persons follow the classes of heirs nearest in blood, with the two exceptions in providing for the one-half blood and the estate of a deceased child which had come to it by one of its parents."

It is plain from the language used in section 8427, supra, that where the inheritance comes to the intestate by descent, devise, or gift, it was intended in such cases in providing for the devolution of such an estate, where there are kindred of the half blood, to exclude all those who are not of the blood of such ancestor from whom such an estate had come. Then the estate goes to those kindred nearest in blood to the deceased and of the blood of the ancestor from whom such estate came. We fail to find any sound reason for holding that the statute is inoperative for a failure of heirs of the whole blood to such deceased, for the reason the plain provisions of the statute exclude those of the one-half blood if they have not the blood of the ancestor from whom the estate had come in the manner therein provided. In the case of Kelly v. McGuire, supra, it was held:

"In all cases where the inheritance is in any one line, it there goes in succession per capita, if in equal degree, and per stripes, if in unequal degree, precisely as if the other line was extinct, and precisely as the inheritance of a bastard would take a course in his mother's line, he having no father's line at all."

In the case of Amy v. Amy, supra, wherein the court was considering a statute identical with section 8427, and under a state of facts in substance the same as involved in the instant case, the court held:

"In answer to section 2749, it is claimed that it can have no application except in cases of next of kin of the half blood and

the whole blood in equal degre; that is, if the claimant be within any of the classes expressly preferred, viz., either wife, child, parent, brother, or sister, this simple fact of near relationship to the deceased is by the statute made sufficient, without inquiring as to blood, or the source from which the estate came. We cannot agree with counsel in the views so learnedly put forth by them nor with the decisions cited by them from 21 Mich. 229 (Ryan v. Andrews); 32 Mich. 70 (Rowley v. Stray); and 43 Wis. 167 (Kirkendall's Estate). The statute is clear and unambiguous, and means precisely what the words import—that kindred of the half blood are excluded from inheriting the property that descended from a line in which they are not related. The word 'ancestor,' as used in this connection, is construed to mean the last possessor before the decedent; that is, the person from whom the land immediately descends to the decedent. The propositus of Oscar A. Amy and Lavira C. Smith was their mother and upon the death of Lavira C. Smith, her estate was inherited by the decedent herein. The estate in question 'came by decedent to the intestate,' Oscar A. Amy, from his ancestors, Lavira C. Amy, and Lavira C. Smith, Gardner v. Collins, 2 Pet. 89; Cutter v. Waddingham, 2 Mo. 264; Valentine v. Wetherill 31 Barb. 666; West v. Williams, 15 Ark. 693; Wheeler v. Clutterbuck, 52 N Y. 70; White v. White, 19 Ohio St. 534; note to Prescott v. Carr, 61 Am. Dec. 660.

"Before Royal D. Amy et al. can inherit any portion of the estate of the decedent they must trace their blood to the propositus through whom decedent inherited the property. They cannot connect themselves in this manner with the mother of Oscar A. Amy, from whom he inherited an undivided one-half; neither can they trace their blood to his half-sister, from whom he inherited the remaining half. Perkins v. Simonds, 28 Wis. 90; Kelly's Heirs v. McGuire, 15 Ark. 588; Den v. Searing, 8 N. J. Law, 347; Deadrick v. Armour, 10 Humph. 599. The provisions of the statute under which brothers and sisters may inherit are to be construed with reference to the section precluding kindred of the half blood from inheriting estates descending from the ancestors of the decedent. Kelly's Heirs v. McGuire, supra. In the cases above cited, and particularly Kelly's Heirs v. McGuire and Cutter v. Waddingham, this question has been so exhaustively discussed, and statutes similar to ours construed, that we feel it would be a superfluous task to elaborate what we have said. The overwhelming weight of authority is against the views of the Michigan and Wisconsin courts, and we see no reason for departing from the rule so well-nigh universal. The statute of succession was passed in 1884, and the Legislature had, presumedly before it the almost unbroken line of authorities sustaining the construction against which appellants contend. To the Legislature must be committed the labor of changing the statute, if change is desirable. Under our view of the statute, Jennie Amy is the sole heir of her husband."

It is our conclusion that the weight of authority sustains the rule announced by the Supreme Court of Utah in the case of Amy v. Amy, supra, and places upon such statutes a reasonable and logical construction.

It is insisted by counsel for the plaintiffs in error that, section 8427 having been adopted from California, this court should place the same construction upon the statute as the Supreme Court of California. In the case of In re Belshaw's Estate, supra, the Supreme Court of California in the following language concedes that the rule of construction as adhered to by it is against the weight of authorities:

"In a majority of decisions the courts have construed the exception referring to ancestral property as excluding in every case all kindred of the half blood not of the blood of the ancestor, the construction favored by appellants."

This court in the case of Hutchinson v. Krueger, 34 Okla. 23, 124 Pac. 591, held:

"While it is the general rule that the Legislature of one state, in adopting a statute of another state, is presumed to have adopted the construction placed on such statute by the highest court of such other state prior to its adoption, yet this rule has its exceptions: First, where the construction is contrary to the Constitution or the well-defined legislative policy of the adopting state; second, where the adopted statute exists in many other states and such construction is contrary to the decided weight of authority in such other states having substantially the same statute."

Under the rule announced in this case and in view of the conclusion reached upon the proper construction of section 8427 of the statutes, we are unable to concur in the contention of counsel for the plaintiffs that this court should follow the California rule. Having reached this conclusion, therefore, James Thompson inherited no part of the estate of Minnie Thompson, and the question as to the proper court to approve a conveyance executed on second descent of lands of a deceased allottee is not necessary to a determination of the same. However, it may be observed that under the plain language of section 9 of the act of Congress of May 27, 1908 the court designated for the approval of such conveyances is the court having jurisdiction of the settlement of the estate of said deceased allottee, and that such court is the particular federal agency creat-

ed for the approval of such conveyances so long as the land of the deceased allottee is inherited by restricted heirs.

For the reasons stated, the judgment of the trial court is affirmed.

JOHNSON, C. J., and NICHOLSON, BRANSON, HARRISON, and MASON, JJ., concur. COCHRAN, J., dissents.