### In re LONG'S ESTATE.
### WATSON v. PRYOR.

No. 26599. Dec. 15, 1936.

Rehearing Denied April 20, 1937.

L. R. Stith and F. E. Chappell, for plaintiff in error.

Walter L. Gray, D. E. Foley, John L. Arrington, and Snyder & Lybrand, for defendant in error.

PHELPS, J. This opinion deals primarily with the question whether a predeceased husband is the ancestor of his surviving wife, within the meaning of section 1626, O. S. 1931, sometimes called the half-blood statute.

Jennie Long will hereinafter be called the decedent. She outlived three husbands, from each of whom she inherited property by descent or devise. She then married a fourth husband, Frank Long, and died intestate. Frank Long, the surviving fourth husband, was awarded one-ha'f of her entire estate, which had been acquired by the decedent from many sources. It is conceded that under our statutes governing succession, the distribution of the one-half interest to Frank Long was proper. He is not a party to this appeal.

Left surviving the decedent were also Celia, a full-blood sister, and Joseph, a half-blood nephew, who is the only child of decedent's predeceased half sister. By reason of our half-blood statute the trial court excluded the half-blood nephew, Joseph, from participating in that part of decedent's estate derived from her three predeceased husbands. The decree of that court vested in the full sister, Celia, the one-half of that portion of decedent's estate derived from said husbands, and the other half, as above stated, to Frank Long, the surviving husband. Joseph appeals, contending that he and Celia, the full sister, should each have taken a fourth of that portion of decedent's estate derived from her predeceased husbands. The contention of Celia, which was upheld by the trial court, is that the property coming to the decedent from her three predeceased husbands was an inheritance from ancestors of the decedent; that Joseph, the half-blood nephew of decedent, is not of the b'ood of said husbands, and is therefore precluded from sharing in the portion of the estate inherited by decedent from them, by virtue of section 1626. O. S. 1931. The plaintiff in error, Joseph, contends that the predeceased husbands of the decedent cannot be considered decedent's ancestors, since she was not related by blood to any of them, and that therefore he should share equally with Celia in that part of the property.

Section 1626 is:

"Kindred of the half-blood inherit equally with those of the whole blood in the same degree, unless the inheritance come to the intestate by descent, devise or gift of some one of his ancestors, in which case all those who are not of the blood of such ancestors must be excluded from such inheritance."

Before entering into the discussion of the particular question, let us first become familiar with some of those factors which determine the applicability of the section, for this prevents confusion. These constructions are either apparent from the section or have become the settled law:

(a) When the section speaks of kindred of the "half b'ood" or "whole blood" it means the half-blood or whole-blood relationship **to the decedent**, and not of the relationship of the contending heirs, to each other or to the ancestor. Thus a father may have a chi'd by each of two predeceased wives; the children are half blood to each other but they are full blood to the father, at whose death intestate his property passes under section 1617, and the ha'f-blood statute is not applicable at all. Zweigel v. Lewis, infra.

(b) (1) The half-blood relatives of the decedent inherit **in all cases** except those in which the decedent derived the property from his or her **own** ancestor. This is therefore the first question to determine. If it is found that decedent did **not** by descent, devise or gift derive the property from his or her own ancestor, the problem is finished, there is nothing left to do, the estate descends exactly as if the half b'ood were whole blood. (2) But if decedent **did** derive the property from his or her own ancestor, then this is what happens: those half-blood kindred of decedent who are also of some blood kindred to decedent's ancestor will inherit exactly as if they were whole-blood kindred of decedent, but those half-blood kindred of decedent who are not of any blood kindred to decedent's ancestor must be excluded. It obviously is immaterial whether the half-blood heirs are related to the person from whom the decedent derived the property **unless that person was an ancestor of decedent.**

(c) "The inheritance" means that part of decedent's property which decedent derived from an ancestor by descent, devise, or gift. It reflects the extent of the property rather than its character, the latter being deter-

mined by whether it came (1) from an ancestor, (2) by descent, devise or gift.

(d) The words "in the same degree" preserve the same equality of distribution to half bloods as is provided for full bloods under section 1617. In other words, kindred of the half blood to **decedent** are in the same position as those whole bloods who are of the same degree of kindred to the decedent. In Re Smith's Estate, 131 Cal. 433, 63 P. 729, 82 Am. St. Rep. 358, the California court held that these words rendered the section entirely inapplicable between kindred of different degrees, but that construction of the California statute, which is identical with ours, was correctly refused by this court in Thompson v. Smith, 102 Okla. 150, 227 P. 77. This court has taken the position that the right of representation exists in the descendants of half bloods the same as it does in full bloods; that if, say, a half brother inherits at all, he is considered the same as a "brother," as that word is used in section 1617, and his descendants inherit his part under that section. Zweigel v. Lewis, 139 Okla. 171, 281 P. 787; Thompson v. Smith, supra; annotation 29 L. R. A. 541. Thus if a half blood inherits at all, he inherits as if he were whole blood.

(e) It is important to observe that there is no requirement in the section that the whole-blood kindred to decedent must, in order to inherit, be of the blood of decedent's ancestor; for the devolution to those of the whole blood is governed by section 1617 (the second subdivision in this case), which section does not look to the source of decedent's title. Zweigel v. Lewis, 139 Okla. 171, 281 P. 787.

Applying the section to the present case, the determining factors may be stated in this manner: Joseph inherits under the facts of this case exactly as if he were a full-blood nephew or full-blood sister of decedent, **unless** the predeceased husbands of the decedent were her ancestors within the meaning of this section; and then if they were her ancestors, Joseph does not partake in the distribution of the estate received from them, for he is not of their blood. The question has now resolved itself into whether said predeceased husbands were "ancestors" of their surviving wife, and the answer to that question decides this case. We hold that they were not.

In fairness to her, and so that both sides of the controversy may be fully considered, we approach the solution of this question first from the viewpoint of Celia, the full sister, whose theory was adopted by the trial court. Her conclusion that an intestate husband is the ancestor of his widow within the meaning of our laws of succession is reached as the result of a series of successive steps of reasoning, the logical force of which must be given its proper importance. First, it is true that the common-law canons of descent are supplanted in Oklahoma by our succession statutes, which provide in themselves a well-rounded plan, complete in itself, whereby under probably any and all conceivable situations of survivorship the decedent's property passes to persons related to him by blood or marriage. The widow is one of these persons. She is named in the succession statutes along with his blood relatives. The succession to property is described as "the coming in of another" thereto (sec. 1614), and the property of an intestate passes to his "heirs" (sec. 1615). In many decisions we have referred to the surviving spouse as an "heir," though more preciseness would have demanded that "heir at law" or "distributee" be used instead. (In our research we have observed that in many states with similar statutes it has been held that while she stands on the same footing with, she nevertheless is not, an "heir" in the strict sense of the word. For criticism of this use of the word, see 9 R. C. L. 51. However, we pass over that point.) The word "ancestor," in the sense now being considered, is often used as the correlative of "heir." Celia accordingly reasons that because the widow is an "heir" of her deceased husband, the use of the word "ancestor" in a sense correlative to "heir" must result in identifying the husband as her ancestor within the meaning of the succession statutes, which, she says, do not make ancestorship dependent upon blood, any more than they make succession dependent upon blood.

Prolonged consideration of the foregoing contention tends somewhat to lessen the logical objections thereto which seem to arise on first study. The contention is not so faulty that it may be dismissed in a few sentences. The popular notion of the meaning of the word "ancestor," as being a forefather, a progenitor, one from whom the descendant is sprung, is not precisely the sense in which it is used in the statutes and cases. In the popular conception of its meaning one could not correctly be called the ancestor of his brother, yet we have held that he may be, within the meaning of our succession statutes. Zweigel v. Lewis, 139 Okla. 171 at 174, 281 P. 787 at 790. See, also, Chastain v. Larney, 134 Okla. 127, 272 P. 471. To accomplish the purpose of such statutes grandsons have frequently been held the ancestors of their

grandfathers, and in some cases nieces have been held the ancestors of their aunts, and vice versa. So we see that some violence has already been done to the natural meaning of the word. However, it remains to be seen whether such proposed definition as advanced by Celia, arrived at in the manner above described, would conflict with that significance of the word "ancestor" which in our opinion is evident from the statutes themselves and the manner in which they use the word.

The Oklahoma decisions construing the half-blood statute are Hill v. Hill. 58 Okla. 707, 160 P. 1116; O'Neil v. Lauderdale, 80 Okla. 170, 195 P. 121; McKay v. Roe, 96 Okla. 87, 219 P. 921; Thompson v. Smith, 102 Okla. 150, 227 P. 77; Gray v. Chapman, 122 Okla. 130, 243 P. 522; Cooper v. Spiro State Bank, 137 Okla. 265, 278 P. 648, and dissenting opinion at 279 P. 903; Zweigel v. Lewis, 139 Okla. 171, 281 P. 787; In re Yahola's Estate, 142 Okla. 79, 285 P. 946; Moffett v. Conley, 63 Okla. 3, 163 P. 118; Bates v. Huddleston, 146 Okla. 259, 293 P. 1047; In re Moran's Estate, 174 Okla. 507, 51 P. (2d) 277. None of those cases decides the question now before us. Joseph contends that in Zweigel v. Lewis, supra, we held that a deceased first wife, Agnes Stephen, was not the ancestor of her surviving husband, Jim Stephen, and that for that reason upon his death the property he had inherited from her descended equally to his surviving second wife and to children of both marriages, who were half brothers and half sisters to each other. We did not so hold, and this misconception serves to illustrate the necessity of accurately establishing the relationship of the parties before attempting to apply the statute. To illustrate: In the second phase of the Zweigel Case the particular decedent being considered was Jim Stephen, and the particular inheritance being considered was that which he had received from his first wife; the children being considered were two by his first wife and one by his second. Certainly the children were "half blood" to each other, but they were full blood to the decedent (which is the test), since they were all his children, though by different wives. Therefore in that particular phase of the case the devolution was governed by subdivision 1 of section 11301, C. O. S. 1921 (now 1617, subd. 1), controlling situations wherein decedent leaves a surviving spouse and a child or children, and we so stated. Since it was not a proper situation for application of the half-blood statute, it was not necessary to determine whether the deceased first wife was ancestor to the sur-

viving husband. On the other hand, Celia contends that a later phase of the same case, in using the following language, has bound this court to hold that a deceased husband is the ancestor of his widow:

"In the absence of a statute defining or controlling ancestor, a gift or devise, as used in this connection, must be construed to mean a gift or devise from the last possessor before descent is cast, and not from some other ancestor more remote. In other words, the person from whom the land immediately descends to the decedent, without reference to remote ancestors. Chastain v. Larney, 134 Okla. 127, 272 P. 471; Oliver v. Sanders, 8 Ohio St. 501."

The word "possessor" in the above quotation from the body of the opinion was changed to "ancestor" when the principle of law involved was announced in the 7th syllabus, and the parties argue considerably over which should control. That is immaterial. It is plain that the point being decided was not "Who is an ancestor?" but was "Which of several ancestors is the ancestor meant by the statute?"

As to decisions from other jurisdictions: Having observed that neither of the parties cited any controlling case from other states having substantially the same statutes as Oklahoma (Alabama, California, Idaho, Michigan, Minnesota, Montana, Nebraska, Nevada, North Dakota, South Dakota, Utah, and Wisconsin), we conducted a research of our own, and found very few cases where this question had been considered. The California decisions treated at length by the parties (In re Smith's Est., supra; Pearson's Est., 110 Cal. 524, 42 P. 960; Belshaw's Est., 212 P. 13) are not in point in this controversy, for they deal with whether failure of wholeblood relatives affects the right of inheritance of the half blood, which is another question, and this court refused to follow them in Thompson v. Smith, supra.

A very few decisions from other jurisdictions having different plans of succession from ours were found, but extreme care is needed in analyzing such cases. For instance, in Cornett v. Hough, 136 Ind. 387, 35 N. E. 699, decided in 1893, it was held that the deceased spouse is the ancestor of the surviving spouse, but throughout the very able brief filed herein by counsel, who insist upon the same holding in this state, it is clearly pointed out that we should with great hesitance accept any of the doctrines of Indiana, due to the differences in the statutes, which probably is why that case was not cited in defendant in error's brief. We could not get

any help from it. It simply did not discuss the proposition; the point was disposed of in the manner of an abstract announcement to the effect that such was "clear from our laws of descent, and from the decisions of this court," followed by citations of six previous decisions, in each of which we have searched in vain for the precise question involved. In a still earlier decision (Frantz v. Harrow, 13 Ind. 507, not cited in the Cornett Case) it was held that, since the statute made the widow a "descendant" of her deceased spouse, he would be considered her ancestor. Indiana seems to be about the only state with that view.

Our search of the digests reveals that only two other states have passed squarely on this point, and they hold oppositely to Indiana. Of those, we shall discuss only the Ohio cases. Celia, the defendant in error, contends that the Ohio cases (holding the deceased husband is not the ancestor of the surviving wife) are not in point, for the reason that under the Ohio statutes the surviving spouse was not entitled to a fee-simple distribution of any portion of the deceased spouse's estate; that therefore she could not have been considered an "heir," as she is in Oklahoma, and that accordingly it was impossible under the Ohio statutes for the deceased husband to have been considered her ancestor; in short, that the statutes of Ohio demanded that result there, and that had our plan of succession been in force there, the court would have held oppositely.

We were somewhat inclined at first to the same belief, but not after a more detailed study of the Ohio cases. Birney v. Wilson, 11 Ohio St. 426, holding the husband not an ancestor, was based on two grounds: first (and mainly) upon the legal significance of the word itself and the manner in which it was used in the statutes; second, on the fact that the surviving wife was not an "heir at law." Though the particular statute being construed in that case was not limited to half bloods, its operation was according to substantially the same tests as our half-blood statute, and the exact question being considered was the same as in this case. Among other highly persuasive points made, it was pointed out that, if the estate came from an ancestor of decedent, the statute required the claiming heir to be of the b'ood of both the decedent and the ancestor, which could not well be unless the decedent was also of the blood of the ancestor. It is the same here, and the same reasoning is applicable. We quote from that case:

"All the recipients of the inheritance, in the ascending and descending line, are re-quired to be of the kindred and blood of the intestate. It would seem, therefore, that no one could take such inheritance under this section, unless he is of the kindred and blood of the intestate as well as of the person from whom the intestate derived it, and it would also seem to follow that the intestate must also, under this section, be of the same blood of the person from whom the estate came, else the kindred of the intestate could not be the kindred * * * of the previous owner, nor could there be such common or commingled blood as its various subdivisions seem to require. So, too, it would seem to follow that no person could be an ancestor of the intestate, within the meaning of this section, unless he is of the blood of the intestate, a descendant from the same stock. And the decisions in this state, heretofore referred to, enlarging the common-law definition of the term 'ancestor', in its application to our statutes of descents, are all consistent with this result, as they are, without exception, cases in which the person adjudged an ancestor was of the same blood as the person whose ancestor he was held to be. If this view be correct, it would follow that the first section of the act of 1857 cannot be resorted to, to direct the course of descent from Mrs. Palmer, for it is not pretended that she was origina'ly related by blood to her deceased husband. * * * In accordance with this view, it may now be regarded as the settled law of Ohio, that the word 'ancestor,' as used in our statutes of descents, means any one from whom the estate was inheritable by the intestate, as heir, in the absence of other and nearer heirs. 14 Ohio, 385; Penn v. Cox. 16 Ohio Rep. 32; Prickel v. Parker, 3 Ohio St. 394. But these cases do not decide but that the ancestor need not be related in blood to the intestate, so as to reconcile the whole section, as they were all cases in which such relationship in fact existed."

We further find that Ohio itself has expressly held to the contrary of Ce'ia's explanation for the Ohio cases. It has been held in that state that the test of whether one is an ancestor is not whether the decedent would have inherited had there been no will. Springer v. Fortune (Ohio) 2 Handdy, 52, 55. From examination of the decision itself we find the following summary of the holding therein, from 1 Words & Phrases (1st Series) p. 381, to be correct:

" 'Ancestors,' as used in the statute of descents relating to a devise or deed or gift from any 'ancestor,' does not mean one from whom the estate, had it not been devised or given, would have come in the regular course of descents. It is not to be confined to its original meaning of one from whom a person lineally descended, but means of the same blood as a taker. Any one from whom an estate is derived by act of law and right of blood is in a legal sense an ancestor. 'In

the idea of the term "ancestor" there are two things to be observed, the character of the estate and the personal relationship, or the act of law and the right of blood,' and it was in view of this personal relationship and right of blood that the words 'any ancestor' were used in the statute. A capacity to inherit, kindred to common stock or inheritable blood, will suffice to constitute one an ancestor of another."

Concluding this phase of the discussion, those interested in this and related questions dealing with half-blood inheritance may find interesting dissertations in the following: 42 Yale Law Journal, 101; 16 California Law Review, 162; 29 L. R. A. 541; 26 L. R. A. (N. S.) 603; 1 Probate Law & Practice (Ross) 149; Horner on Estates (3d Ed.) secs. 3, 4, 6, 23; Walker on American Law (11th Ed.) sec. 409, (10th Ed.) 392, 418; 2 Blackstone's Com. 220; 2 C. J. 1333; 18 C. J. 818; 9 R. C. L. 51, 18, 33; Dec. Dig., "Descent and Distribution," key numbers 11, 14, 21, 35, 41; 61 Am. Dec. 655-667.

However, even without the Ohio decisions, it appears to us that it was never intended that a deceased husband should be considered his surviving wife's ancestor. Let us treat this as an entirely new question: Under such circumstances we believe that there are two dependable fields of inquiry. The first is to determine, if possible, the sense in which the word "ancestor" is used in other and related sections of the same chapter, and if that meaning is uniform in those sections, it is very likely that it was intended to have the same meaning in this section. The second is to consider the purposes and reasons back of the statute, including historical considerations, to determine just what was the specific result sought to be accomplished or the specific evils sought to be avoided by its enactment; and in this manner ascribe to the word such meaning as will be most harmonious with those purposes. If both routes of inquiry lead to the same result, we feel fairly certain that such conclusion will be correct.

When we examine the statutes themselves for the sense in which the word "ancestor" was used, our inquiry is not so much whether the word means a forefather or progenitor (for we know that the courts have gotten away from that specific meaning). The question to be determined is whether its meaning is to be limited to those related by blood to the decedent,—or, conversely, do the statutes ignore the blood stream in their use of the word, indicating that anyone from whom property passes to another under the laws of succession is meant to be the "ancestor" of that person? If it is plain that one of these meanings was intended, we cannot accept the other, for courts are not at liberty to suppose or to hold that the Legislature intended anything different from what their language imports.

The sixth subdivision of section 1617 reads:

"If the decedent leave no issue, nor husband nor wife, and no father or mother, or brother or sister, the estate must go to the next of kin in equal degree, excepting that when there are two or more collateral kindred, in equal degree, but claiming through different ancestors, those who claimed through the nearest ancestors must be preferred to those claiming through an ancestor more remote."

It cannot be denied that "ancestor" in the above subdivision is used exclusively in the sense of blood. There is no manner in which collateral kindred may trace their ancestry to one common ancestor except through the medium of the blood stream back to the point (ancestor) where it divided. This is the first section in the chapter on descent and distribution in which the word is used, and we find it used there in a natural manner, in its ordinary meaning, and no other word would have expressed the exact thought desired.

We next find the word used in sections dealing with degrees of kindred and distinction between lineal and collateral consanguinity. Section 1621 provides that the degree of kindred is established by the number of generations, and that each generation is called a degree. Section 1622 reads:

"The series of degrees from the line; the series of degrees between persons who descend one from the other, is called direct or lineal consanguinity; and the series of degrees between persons who do not descend from one another, but spring from a common ancestor, is called the collateral line or collateral consanguinity."

Section 1623 reads:

"The direct line is divided into a direct line descending and the direct line ascending. The first is that which connects the ancestor with those who descend from him. The second is that which connects a person with those from whom he descends."

There can be no argument about whether the word is used in these two sections in its limited meaning of blood relationship, for such and the degree thereof are the very subjects of the sections, the things which they are "talking" about. Section 1622 in its first part speaks of "consanguinity," which is blood kinship; and in the second portion

thereof speaks of springing from a common ancestor, and those who spring from a common ancestor are in collateral "consanguinity." In section 1623, above, the direct line is divided into its descending and ascending directions. The descending line connects the "ancestor" with those who "descend" from him, and it is significant to note that though the word "descend" when used in other places as describing the descent of property does not always refer to descent from an ancestor, yet as it is used in this section, in connection with the word "ancestor," it is speaking of persons, instead of property. One cannot descend from his ancestor except, of course, through the blood stream.

It next appears in section 1625. Does that section use the word in the sense that it means anyone from whom property descends under any circumstances? Or does it use it in its blood significance? A glance at that section should be sufficient to answer the question. It reads:

"In the collateral line the degrees are counted by generations, from one of the relations up to the common ancestor, and from the common ancestor to the other relations. In such computation the decedent is excluded, the relative included, and the ancestor counted but once. Thus brothers are related in the second degree, uncle and nephew in the third degree, cousins german in the fourth degree, and so on."

The very next section following 1625 is the section which we are construing, the half-blood statute. When the makers of this Code used the word solely in the sense of blood in three of the four immediately preceding sections, can it be said that in the very next section (which section also deals with blood) they intended a different meaning from that which they had just used? It is not reasonable to assume that they did. We think that when it was provided in section 1626 that kindred of the half blood would inherit unless the inheritance had come to the intestate by descent, devise, or gift of some one of the intestate's ancestors, the Legislature could not have intended to use the word in a different sense or significance than that in which it was used in the sections immediately preceding the section.

Section 1626 itself is wholly wrapped in terms and ideas of blood and the effect thereof upon inheritance: "kindred," "half-blood," "whole blood," "in the same degree" (degree is traced by the blood stream), "from one of his ancestors," "of the blood of such ancestor."

We adopted our chapter on succession from the Dakota Territory. It is said that the Dakota Territory adopted it as the finished product of the Field Code Commission, and that commission, composed of able and scholarly lawyers of great experience and erudition, after a long period of study of the decisions and statutes of the state of New York, reduced to statute form those principles of succession which seemed most desirable, fitting, and practicable to the American needs. The Field Code was rejected by the state of New York, but was adopted by many other states and Dakota Territory. It is inconceivable that scholars such as these, meticulous in their use of words, thoroughly cognizant of the great importance of the meaning thereafter to be attached to the words of their choice, would use the word "ancestor" in its blood significance in every section of their Code except one, and in that section intend for it to have an entirely different meaning. If they had intended "ancestor" to mean anyone, regardless of blood relationship, from whom an estate had descended through succession or the laws of descent, they would have used words to express that meaning. It is certain they did not intend that definition in the other sections. We cannot presume other than that the Legislature of this state, in adopting this Code, intended to accept the word "ancestor" in section 1626 in the same meaning and with the same significance that it carried in the sections immediately preceding it.

We recognize that neither would those sections permit the inference that "ancestor" could include the brother of a decedent. Nevertheless, a brother of the decedent is of the same blood as the decedent, and it is for that reason only that he is permitted by the statute to inherit at all. It must be admitted in all candor that calling one brother an ancestor of another brother is in itself stretching the ordinary meaning of the word; yet that does not mean that we should exceed all reasonable bounds in the matter by carrying its meaning entirely over and into another field, where we believe it never was intended to be used. No decision of this court nor (except in the single instance in Indiana above mentioned) of any other court has extended the meaning of this word beyond that of some blood relationship, so far as we have found. To do so is to completely divest the word of any remnants of its original meaning whatsoever. The language used by the Ohio court, supra, likewise describes our own situation:

"And the decisions in this state, heretofore referred to, enlarging the common-law definition of the term 'ancestor,' in its ap-

plication to our statutes of descents, are all consistent with this result, as they are, without exception, cases in which the person adjudged an ancestor was of the same blood as the person whose ancestor he was held to be."

In a general way, it may be said that laws of descent and distribution are built on and around the idea of blood kinship. (Of course, the surviving spouse has been added, but that does not change this truth.) And though from time to time various changes have been made in the statutes of descent and distribution, such as substitution of fee title for dower and curtesy, "the principle that a man's intestate property shall go to his own next of kin has been at all times recognized and preserved." 9 R. C. L. 18. That is, such statutes are built upon a framework of consanguinity; it is only recently that the surviving spouse has found a place therein, and his or her rights are limited by the express terms of the statute, as are the rights of others. The following is announced in 9 R. C. L. 19:

"It may stand assumed that consanguinity is so fundamental in such statutes that it may be ignored by construction only when courts are forced to do so, either by the terms of an express statute or by inexorable implication."

It appears to us that the "inexorable implication" in the instant statutes is in the opposite direction, to the effect that those not of the blood of the decedent shall not be considered his ancestors.

Historical consideration of the question involved leads to the discovery of the reason for the statute and the purposes sought to be accomplished thereby. Prior to 1690 the common law of England excluded half bloods from inheriting in any case. After that date it changed so that brothers and sisters of the half blood partook with those of the whole blood in personal property, and that situation in turn underwent changes in both the common law and the statutes until today the general rule in America is that the half blood partake equally with the whole blood in both the real and personal property of the decedent, and this is true in most jurisdictions even where there is no express statute on the subject. It was inevitable that the doctrine of ancestral estates should become intermingled with the law relating to half bloods. This was in the very nature of things. The parties to this appeal argue at great length over whether the doctrine of ancestral estates is recognized in Oklahoma, all of which is a mere bandying of words, because of course that doctrine is in force

here to the extent only that those principles thereof which have been deemed acceptable are incorporated into our statutes. To that extent, and no further, it must be admitted that such doctrine is a part of the law of this state. We understand that the defendant in error does not object to our using the term in its adjective sense, and that is the use to which we here put it,—namely, as a tool of inquiry to determine the purpose of this statute. Texts and text writers frequently refer to this statute (sec. 1626) as "the ancestral estate statute," and they refer to the property in question as "the ancestral property." For instance, 9 R. C. L. 34 states that in consideration of "ancestral estates" and within the meaning of the statutes governing half bloods, the courts in general include those inheritances acquired by gift, descent, or devise. In Re Yahola's Hership, 142 Okla. 79, 285 P. 946, we held that the ancestral estate doctrine could not be invoked so as to make an original Indian allotment ancestral in character, and overruled prior cases holding that such allotment was, but we did not hold that such portions of the ancestral estate doctrine as are included in our statutes are ineffective. Many of our decisions, both prior to and following the Yahola Case, have spoken in terms of "ancestral estates," and the rules governing them, as a means of explanation or by way of illustration.

We observe a certain similarity between the common-law definition of "ancestral estate" and that property described in section 1626 as the "inheritance." The common-law definition:

"Ancestral estate ordinarily is realty which came to the intestate by descent or devise from a now dead ancestor or by deed of actual gift from a living one, there being no other consideration than that of blood. Nonancestral property is realty which came to the intestate in any other way." McKay v. Roe, 96 Okla. 87, 219 P. 921; In re Yahola's Heirship, supra: Walker's Am. Law (10th Ed.) 392.

Observe "descent," "devise," "gift," and "ancestor" inherent in that definition, and, what is more important, that the same words in practically the same sense and sequence compose the body of section 1626. Section 1626 is the statutory pronouncement of that much of the ancestral estate doctrine as was deemed wise for our purposes by the makers of the Code. Another important principle in that doctrine was that those not of the blood of the ancestor should not inherit; the same thing is incorporated into our section 1626 in so far as it affects the half blood only.

It is therefore entirely fitting that the meaning of the words used in that section may be inquired into by the use of the ancestral estate doctrine, and explained with reference to the tenets and principles thereof. The words "there being no other consideration than that of blood," in the definition of ancestral estates so often heretofore embodied in our opinions, preclude consideration of any kind of ancestor in that doctrine except a blood ancestor. The predominating idea in ancestral estates was that the property should be kept within the blood stream. For this reason, if the half blood to the decedent is not of the blood of decedent's ancestor the half blood does not take (section 1626). The widow "inherits" in lieu of dower, and not because of the effect upon our statutes of the ancestral estate doctrine, for she could have no ancestor thereunder except she be related by blood to him. The exception which excludes half bloods under certain conditions in this statute is merely the application to them of the ancestral estate doctrine, and in that doctrine there are no ancestors but of the blood. It is said in many works that

"* * * In the idea of the term 'ancestor,' as derived from the legal definition of a descent, two things are to be observed: the character of the estate and the personal relationship, or, in other words, (1) the act of law and (2) the right of blood. It was in view of this personal relationship and right of blood that the Code makers used the word 'ancestor'."

It therefore appears that neither Joseph (who contends that the test of an ancestor is purely that of blood relationship) nor Celia (who contends that it is determined by whether the decedent would have automatically come into the property under the statutes of succession) is either entirely correct. Yet neither of them is entirely incorrect, for the true test is a combination of both of these theories, that is, "the act of law and the right of blood." The statutes of succession, and who they name as successor, are principally important in those cases where the same property has come down through successive deaths of several ancestors, and the question to be determined is just which of those ancestors is to be considered the ancestor for the purpose of governing devolution among the heirs of decedent, as in Zweigel v. Lewis, supra (see 1st col. 139 Okla. 174, 281 P. 790), where it was held to be the last or immediate ancestor of decedent, the ancestor from whom it was immediately cast to decedent, as distinguished from decedent's more remote ancestors. On the other hand, the blood significance of the word is not so important that the ancestor need be a lineal ascendant of the decedent. Chastain v. Larney, 134 Okla. 127, 272 P. 471; Zweigel v. Lewis, supra.

Briefly, in conclusion, let us consider the situation from its practical viewpoint. It will appear from the following that if our holding is correct the discrimination against half bloods in certain instances may be explained, and that if we are incorrect it then follows that the codifiers and Legislature simply made an arbitrary discrimination without reason. As between the two, we should, if possible, construe the section under that theory which gives to the discrimination some reasonable basis in fact and practice. Stating one theory: If the ancestor of the decedent need not be of decedent's blood, then what reason could have existed for excluding the half sister of decedent, and at the same time including her full sister, while the half sister shares equally with the full sister in all other "new acquisitions." (This is in fact "new property"; it was not in the family, in the blood stream, before. It did not descend from the blood stream.) The answer is that no reason for such an arbitrary and baseless discrimination can be found. Now the other: But the discrimination becomes reasonable and properly based upon differences between the sister's and half sister's relationship to the property if we take the view that the ancestor must be of the blood of the decedent, for the following is clear: If the property came "free" to the widow (gift, devise, or descent) from her blood relative, then if it remains upon her death, it is reasonable that it stay in that blood from which it came; this includes her full sister, who is of the same full blood as the widow; it excludes the half sister if she is not of the blood from whence came the property, but it includes her if she is of that blood. All of which is fair and just. But it necessitates holding that the "ancestor" spoken of be at least "of the blood" of the decedent, which it seems to us was the meaning intended to be ascribed to it. In this meaning the word accomplishes the results intended by the statutes as a whole and avoids unwarranted inequalities between the surviving heirs.

One other proposition is advanced by the plaintiff in error, concerning property derived by the decedent from both this and other sources. It is correct but inapplicable to the facts of this case, and we are not inclined to discuss it.

Our holding is that within the meaning of section 1626, O. S. 1931, a deceased husband

who is not of the blood of his surviving wife is not the ancestor of the surviving wife, and that when she subsequently dies intestate the property which had come to her from said husband by descent, devise, or gift is shared by the half blood relatives of the decedent equally with the whole blood relatives of the decedent of the same degree of kindred to her as are the half blood. The decedent was not of any of the blood of any of her three deceased husbands. They were therefore not her ancestors, and under sections 1626 and the 2d subdivision of section 1617 the only child of decedent's predeceased half sister inherits that half sister's share of that part of the estate derived by decedent from those husbands, equally with decedent's full sister,—the surviving fourth husband having first received his one-half thereof.

It therefore follows that the judgment must be reversed in so far as it excludes Joseph from participation in that part of decedent's estate. It is so ordered, and the cause is remanded, with instructions to enter judgment in accordance with the directions in the preceding paragraph.

McNEILL, C. J., and BAYLESS, BUSBY, and CORN, JJ., concur. GIBSON, J., concurs in result. WELCH, J., concurs specially. OSBORN, V. C. J., dissents. RILEY, J., absent.

WELCH, J. (concurring specially). I fully agree that marriage does not constitute one spouse the ancestor of the other, and I agree with the result of the majority opinion that as to the property involved, decedent's surviving husband inherits one-half, decedent's sister one-fourth, and decedent's nephew, Joseph, inherits the remaining one-fourth. I do not arrive at that conclusion by the exact route of reasoning of the majority opinion, and I do not acquiesce in all the statements and reasoning of the majority opinion. I, therefore, concur in the result or in the ultimate conclusion of reversal and remand with directions.