## ZWEIGEL v. LEWIS et al.

No. 17957. Opinion Filed Oct. 22, 1929.

W. M. Rainey, for plaintiff in error.

Linebaugh & Fryer, for defendants in error.

HEFNER, J. This suit was brought by Rachel Lewis, one of the defendants in error, to recover an undivided one-half interest in the homestead allotment of Agnes Stephen, a Mississippi Choctaw Indian. The case was tried on an agreed statement of facts. The trial court awarded to A. Zweigel, who had purchased the interest of Jesse Billey, the father of the allottee, an undivided one-third interest in the allotment, but, claiming a greater interest, he has brought the case here for review.

The question involved is one of law, and requires a construction of the statutes of descent and distribution. The fact that the land is an Indian allotment is immaterial, because the several devolutions were cast in the same manner they would have been, had the land been owned by a person of no Indian blood.

Agnes Stephen died intestate in 1909 and was the owner of her homestead allotment at the time of her death. She was survived by her husband, Jim Stephen, and their two minor children, Wade and Annie Stephen, and her father, Jesse Billey.

When she died it is conceded that Jim Stephen, her husband, inherited an undivided one-third interest and Wade and Annie, the two minor children, each inherited an undivided one-third interest, under subdivision 1, section 11301, C. O. S. 1921.

After her death Jim Stephen married Rachel Lewis, the plaintiff below, and of this union was born one child, Ellis Stephen, a half brother of Wade and Annie. Thereafter, on April 30, 1920, Jim Stephen died, possessed of the one-third interest in the allotment he had inherited from his first wife, and leaving surviving him the three minor children and Rachel Lewis, the second wife. What interest did the second wife and the children inherit?

The plaintiff in error says this one-third interest is an ancestral estate, and that Agnes Stephen is the ancestor from whom Jim Stephen inherited the same, and that Wade and Annie Stephen, being of the blood of Agnes Stephen, inherited all of the estate, to the exclusion of Rachel Lewis, the second wife, and Ellis Stephen, the child of the second wife, who were not of her blood.

At the time of the death of Jim Stephen what is now section 11301, C. O. S. 1921, was in force, and a portion of subdivision 1 thereof is as follows:

"* * * If the decedent leave a surviving husband or wife, and more than one child living, or one child living and the lawful issue of one or more deceased children, one-third to the surviving husband or wife, and the remainder in equal shares to his children, and to the lawful issue of any deceased child, by right of representation; * * * Provided, that if the decedent shall have been married more than once, the spouse at the time of death shall inherit of the property not acquired during coverture with such spouse only an equal part with each of the living children of decedent, and the lawful issue of any deceased child by right of representation. * * *"

This statute makes no reference to the source of decedent's title. Under its provisions it is immaterial whether Jim Stephen acquired the land by descent, devise or gift, or by purchase. Descent was cast without any reference whatever as to how the land was acquired by decedent. The property was not acquired during coverture with Rachel, the second wife. The decedent left three surviving children and his second wife. Under these facts the above statute controlled the devolution of his estate and it passed in accordance with the provisions thereof. The property not having been acquired during coverture with his second wife, under the plain terms of the statute the wife took a child's part. His estate was therefore inherited by the wife and the three children

in equal parts, each taking an undivided one-fourth interest therein, or an undivided one-twelfth interest each in the allotment.

After descent was cast by the death of Jim Stephen, the allotment was owned as follows: Rachel Lewis, the second wife, an undivided one-twelfth; Ellis Stephen, an undivided one-twelfth; Wade Stephen, an undivided one-third (the interest he inherited from his mother), plus an undivided one-twelfth (the interest he inherited from his father), or an undivided five-twelfths; Annie Stephen, an undivided one-third (the interest she inherited from her mother), plus an undivided one-twelfth (the interest she inherited from her father), or an undivided five-twelfths.

Thereafter, on June 10, 1920, Wade Stephen, son of the first marriage, died under age and without having been married, leaving as his next of kin his full sister, Annie Stephen, and his half brother, Ellis Stephen. Who inherited his interest in the allotment?

We must remember that his interest in the allotment was made up of two separate estates—the one an inheritance from his father and the other an inheritance from his mother. Subdivision 7, section 11301, C. O. S. 1921, is as follows:

"If the decedent leave several children, or one child and the issue of one or more children, and any such surviving child dies under age, and not having been married all the estate that came to the deceased child by inheritance from such decedent, descends in equal shares to the other children of the same parent, and to the issue of any such other children who are dead, by right of representation."

As to the interest inherited from his father, Jim Stephen is the decedent referred to in the statute, and as to the interest inherited from his mother, Agnes Stephen is such decedent. Since Jim Stephen, the decedent, left three children, Wade, Annie, and Ellis, and Wade died under age, without having been married, all the estate that came to Wade by inheritance from his father, Jim Stephens, descended in equal shares to Annie and Ellis, the two surviving children of Jim Stephen, in accordance with the provisions of subdivision 7, supra. Under the same statute, and by the same reasoning, all the estate inherited by Wade from his mother, Agnes Stephen, descended to Annie, the surviving child of Agnes. It is immaterial how the decedent, Jim Stephen in the one instance and Agnes Stephen in the other, acquired title. The statute makes no reference to the source of "decedents" title. Consequently, it is immaterial that Jim Stephen had acquired his interest by inheritance from Agnes. The source of Agnes Stephen's title is also immaterial. Under the statute, all the estate that came to Wade by inheritance from his father descended to the surviving children of his father, and all the estate that came to him by inheritance from his mother descended to the surviving child of his mother.

After descent was cast by the death of Wade Stephen the allotment was owned as follows: Rachel Lewis, the second wife, owned an undivided one-twelfth; Ellis Stephen owned the one-twelfth interest inherited from his father, plus the one-twenty-fourth interest inherited from his half brother, Wade, or an undivided three-twenty-fourths; Annie Stephen owned the one-third inherited from her mother, plus the one-twelfth inherited from her father, plus the one-third inherited from her brother (the one-third he inherited from his mother), plus the one-twenty-fourth inherited from her brother (the interest he inherited from his father), or an undivided nineteen-twenty-fourths.

After the death of Wade Stephen, and on October 8, 1922, Annie Stephen, while a minor, died intestate, unmarried and without issue, and left as her nearest of kin her half brother, Ellis Stephen, and her maternal grandfather, Jesse Billey. Annie owned an undivided one-third interest inherited from her mother. Who inherited this interest? Section 11310, C. O. S. 1921, is as follows:

"Kindred of the half blood inherit equally with those of the whole blood in the same degree, unless the inheritance comes to the intestate by descent, devise or gift of some one of his ancestors, in which case all those who are not of the blood of such ancestors must be excluded from such inheritance."

This section requires us to look to the source of the title of the intestate, and if the estate came to the intestate by descent from an ancestor, then those of the half blood who are not of the blood of the ancestor are excluded from the inheritance. Under the construction placed on the above section by this court in the case of Thompson v. Smith, 102 Okla. 150, 227 Pac. 77, the half brother, Ellis, not being of the blood of Agnes Stephen, the ancestor, cannot share in the estate Annie inherited from her mother.

Under the agreed statement of facts, Ellis Stephen and Jesse Billey are the nearest of kin, and since Ellis is excluded from inheriting by the above statute, this one-third

interest necessarily goes to Jesse Billey, Annie's maternal grandfather.

In addition to the one-third interest inherited from her mother, Annie owned an undivided one-twelfth interest, inherited from her father, plus a one-twenty-fourth interest inherited from her brother Wade, which he had inherited from their father. These two interests were originally owned by the father, and at the time of the death of the father he left surviving three minor children who inherited three-fourths of his estate. Thereafter Wade died, under age and without having been married. On his death the portion of the estate he inherited from his father was inherited by Annie in accordance with the provisions of subdivision 7, supra. Thereafter, while yet a minor, Annie died, without having been married, and left surviving Ellis Stephen, her half brother. Jim Stephen was the father of all three of the minor children. Under the rule announced in the case of Follansbee v. Owens, 133 Okla. 217, 271 Pac. 1023, subdivision 7, section 11301, is applicable, and on her death these two interests were inherited by Ellis Stephen, the surviving child of Jim Stephen.

When Agnes Stephen, the mother of Wade and Annie, died, Wade inherited an undivided one-third interest in her allotment. When Wade died, this one-third was inherited by Annie in accordance with the provisions of subdivision 7, supra. When Annie died, who inherited this interest, and what is the applicable statute?

On the death of Annie there was no surviving child of Agnes, the original allottee. Since this is true, subdivision 7, supra, can have no possible application, because there was no surviving child of Agnes to take the estate. Since subdivision 7 does not apply, it is necessary for us to look elsewhere for the applicable statute. This one-third interest was originally owned by Agnes, the mother. On her death it descended to Wade, and on Wade's death it descended to Annie. In order to determine the applicable statute it is necessary for us to determine who was the ancestor from whom Annie inherited. Was it Agnes, the mother, or was it Wade, the brother. If Agnes be considered the ancestor, then Ellis cannot inherit, because he is not of her blood and is excluded by section 11310.

In the absence of a statute defining or controlling ancestor, a gift or devise, as used in this connection, must be construed to mean a gift or devise from the last possessor before descent is cast, and not from some other ancestor more remote. In other words, the person from whom the land immediately descends to the decedent, without reference to remote ancestors. Chastain v. Larney, 134 Okla. 127, 272 Pac. 471; Oliver v. Sanders, 8 Ohio St. 501.

Since this devolution is not controlled by subdivision 7, supra, Wade, the brother, and not Agnes, the mother, is the ancestor, notwithstanding the fact that Annie took this interest according to the provision of subdivision 7, as construed by this court in the case of Follansbee v. Owens, supra, where it was said:

"We think, however, subdivision 7 of the statute is not restricted in its operation to the first death, but applies in the case of successive deaths, among the surviving children, so long as they may die while under age and not having been married and so long as there remains surviving one or more children or their representatives so that the statute can continue to have application; and for the reason that the whole estate, upon the second death, as well as the first, is still to be considered as the estate of the deceased parent within the contemplation of subdivision 7 of the act above quoted. We therefore hold that the one-ninth interest passing to Sabye Holuby upon the death of Oksuke Holuby must be treated as much a part of the estate coming from his deceased father as that portion passing to him in the first instance upon the death of his father, and upon the death of said Sabye Holuby his entire interest in and to said premises, under subdivision 7, above quoted, descended to his surviving brother, Nartoke Holuby, to the exclusion of his mother."

This is a special statute controlling the devolution of the estate of a deceased parent, and is not restricted in its operation to the first death of a child, but applies in case of successive deaths among the surviving children, so long as they may die under age and not having been married. The statute regards the estate as coming from the parent upon the death of a second child, as well as the first, so long as other children survive to take the estate. But when the last child dies no children remain to take, and the estate of the last child must necessarily descend under some other section of the statute, and is regarded as coming, not from the child's parent, but from the child itself. When Annie died, this statute could have no possible application to the one-third interest under consideration, because there was no surviving child of Agnes, the mother. Since this is true, we cannot look to subdivision 7 for the determination of the ancestor. We must look to the general defini-

tion, and under it Wade is the ancestor, notwithstanding the fact that on Wade's death Annie inherited the interest under the provisions of subdivision 7, and in that connection the estate was considered as a portion of the estate of Agnes.

Ellis Stephen and Jesse Billey are both of the blood of Wade Stephen and are related to him in the same degree. It may be claimed that since this is true they take the one-third interest equally, under section 11310, supra. Descent was cast under the 3rd subdivision of section 11301, C. O. S. 1921, a portion of which is as follows:

"If there be no issue, nor husband nor wife, nor father, nor mother, then in equal shares to the brothers and sisters of the decedent, and to the children of any deceased brother or sister, by right of representation. * * *"

Annie Stephen died without issue, left no husband, nor father, nor mother, but did leave a half brother. The statute does not use the word "half brother," but it does use the word "brother." As to whether or not the words "brothers and sisters" include half brothers and sisters, the general rule is stated in the case of Anderson v. Bell (Ind.) 39 N. E. 735, 29 L. R. A. 541, where it is said:

"Brothers and sisters of the half blood are included in a statutory provision for descent to brothers and sisters, unless a contrary intention appears."

It is said in the Estate of Smith, 131 Cal. 433, 63 Pac. 729, 82 Am. St. Rep. 358, that the expression "brothers and sisters of decedent" includes those of the half blood, as well as those of the whole blood. This construction from the California court has been followed by this court.

Section 11310, supra, specifically provides that "kindred of the half blood inherit equally with those of the whole blood in the same degree, unless the inheritance come to the intestate by descent, devise or gift of some one of his ancestors, in which case all those who are not of the blood of such ancestors must be excluded from such inheritance." This means that brothers and sisters of the half blood inherit equally with those of the whole blood in the same degree, with but one exception, and that is if the estate come by inheritance the kindred of the half blood who are not of the blood of the ancestor shall not inherit. In Re Pearsons' Estate, 110 Cal. 524, 42 Pac. 960, the Supreme Court of California said:

"The section simply means that kindred of the half blood shall inherit equally with those of the whole blood, except in a certain case, and in that case, kindred of the half blood shall not inherit. * * * We think the plain grammatical construction of the clauses under consideration is that the kindred of the intestate of the half blood shall inherit equally with those of the whole blood, except that if the estate is ancestral only such kindred of the half blood as are of the blood of the ancestor from whom the estate came shall inherit."

This statute requires us to look to the source of the intestate's title, and if the estate come to the intestate by descent, then if the half blood are not of the blood of the proximate ancestor from whom the estate came to the intestate, they are excluded.

In the case at bar Wade was the proximate ancestor of the interest under consideration, and Ellis is of the blood of Wade. It follows that Ellis is not excluded from the inheritance by section 11310, supra. Since he is not excluded thereby, he inherited in the same manner he would have inherited had he been a full brother of Annie. Since we hold that the word "brother," as used in the statute, includes a half brother, we think the third subdivision is clearly applicable, and Ellis took the estate thereunder. The maternal grandfather of Annie cannot take, because this statute does not include him, and since he is not included, he is thereby excluded.

Under the agreed statement of facts, Jesse Billey conveyed all of his right in the allotment to A. Zweigel, the plaintiff in error herein. It is also agreed that neither Ellis Stephen nor Rachel Lewis have conveyed any rights or interest they have in the allotment. It therefore follows that at the time this suit was instituted the allotment was owned as follows: A. Zweigel, an undivided one-third interest; Rachel Lewis, an undivided one-twelfth interest; and Ellis Stephen, an undivided seven-twelfths interest.

A. Zweigel, the plaintiff in error, is the only complaining party here. The trial court awarded to him an undivided one-third interest, which was the interest he owned. The judgment is affirmed.

MASON, C. J., LESTER, V. C. J., and HUNT, CULLISON, SWINDALL, and ANDREWS, JJ., concur. CLARK and RILEY, JJ., not participating.

Note.—See "Descent and Distribution," 18 C. J. §17, p. 817, n. 20; §22, p. 820, n. 67, 75; §94, p. 852, n. 27. "Indians," 31 C. J. §596; p. 524, n. 44.