81 So.2d 358

**Pat CAFFEE et al.**

v.

**J. D. THOMPSON et al.**

4 Div. 735–735–A.

Supreme Court of Alabama.

June 16, 1955.

Jas. H. Bradford, Birmingham, for appellants.

686

John C. Walters and E. C. Orme, Troy, for appellees.

GOODWYN, Justice.

Appeal by respondents from decree in equity determining ownership of "ancestral" land and ordering sale of the land for ·division among the joint owners.

We put to one side questions not material to a decision on the merits, and direct our attention to the one feature which we think is determinative of the case.

Stated hypothetically, the facts are these: A, the owner of certain real estate in Pike County, Alabama, dies intestate leaving surviving him his wife and one child, B. A leaves no other children or their descendants. Thus the land descended to B subject to the dower interest of A's wife. Code 1940, Tit. 16, § 1. The wife dies. Later, B dies intestate leaving surviving him, as his only heirs and next of kin, C, D, E and F, blood aunts and uncle on his mother's side, and G, H, and J, blood aunt and uncles on his father's side.

Query: Who inherits the land from B?

To answer the question calls for a construction of § 5, Tit. 16, Code 1940, which is. as follows:

"There is no distinction made between the whole and the half-blood in the same degree, unless the inheritance came to the intestate by descent, devise, or gift, from or of some one of his ancestors; in which case all those who are not of the blood of such ancestor are excluded from the inheritance as against those of the same degree."

The position taken by appellants is that G, H and J inherit to the exclusion of C, D, E and F for the reason that the property is "ancestral", that is to say, since B inherited it from his father, B's *paternal* aunt and uncles inherit it from him to the exclusion of his *maternal* aunts and uncle. The insistence is that § 5, supra, so provides.

On the other hand, it is claimed by appellees that § 5, supra, has no application to this case since it applies only when the rights of an intestate's kindred of the half-blood are involved; that we are not here concerned with the rights of B's kindred of the half-blood; and that, therefore, all of B's aunts and uncles, on his mother's side as well as on his father' side, inherit the land in equal parts.

The trial court held in accord with appellees' insistence, and, we think, correctly so. Clearly, it seems to us, § 5 is. not applicable to this case.

There is no dispute that all the aunts. and uncles are B's "next of kin" and are entitled to inherit the land from him, in equal parts, by virtue of Code 1940, Tit. 16, § 1, subdiv. 7, unless § 5 is to be construed as changing the rule of descent there pre-- scribed. Deloney v. Walker, 9 Port. 497,. 499–501; Gardner v. Kelsoe, 80 Ala. 497,. 500, 501, 2 So. 680. So, to answer the query we have only to decide whether § 5 excludes from the inheritance of ancestral land all kindred of the intestate in the same degree who are not of the blood.

of the ancestor from whom the land came to the intestate.

█ It is quite clear that the controlling principle of our statute providing for the descent of property, Code 1940, Tit. 16, § 1, is that it shall descend to the *intestate's* next of kin, whether of the blood of his ancestor or not; and not that an intestate's ancestral estate shall descend only to those who are of the blood of the ancestor from whom it came. This was fully recognized in the early case of Deloney v. Walker, supra, where the counterpart of our present statute of descents and distribution was under consideration. It was there said:

> "The material question in this case, is, whether it was the intention of the framers of our statute of descents, that, on failure of lineal descendants, the estate should only descend to those collateral relations, who are of the blood of the first purchaser, which is the fifth canon of descents, as laid down by Blackstone in his Commentaries.
>
> \* \* \* \* \* \* \*
>
> "It is impossible, we think, to doubt that it was the intention of the Legislature to abrogate the entire common law rules of descent, and to introduce new rules in their stead, more consonant to our institutions. Not only is the law of primogeniture abolished, and females placed on the same footing with males, but also all consideration of the necessity of tracing a descent from the blood of the first purchaser, is excluded by necessary implication. That requisition was supported by considerations derived from the Feudal System, and fell with it.—This is demonstrable from the law itself. For example: by the statute, the mother may inherit from the child, an estate of which the father was the first purchaser; at her death, the inheritance would descend upon a new line of heirs, who might not, and generally would not, have any of the blood of the first purchaser. A still more conclusive argument is found in the fact, that by the same act, the personal property of an intestate is to descend to, and be distributed in the same manner as real property is to descend. It would be monstrous, to suppose that the Legislature could have intended to apply the rule contended for, to personal property, yet that would be the legitimate consequence of adopting the construction contended for by the plaintiffs' counsel. We are, therefore, of opinion, that the estate of John Fox, deceased, before his dying intestate, descended upon, and must be divided equally among his uncle and aunts, both on the father's and mother's side."

The statute there under consideration (Aikin's Dig. 128) was as follows:

> "When any person shall die seized of any estate or inheritance in lands, tenements, or hereditaments not devised, the same shall descend to his or her children, and their descendants, in equal parts; the descendants of the deceased child or grandchild to take the share of their deceased parent, in equal parts among them; and when there shall be no children of the intestate, nor descendants of such children, then to the brothers and sisters of the intestate, and their descendants, in equal parts; the descendants of a brother or sister of the intestate to have in equal parts among them, their deceased's parent's share; and where there shall be no children or descendants of them or any of them, and no brothers or sisters, or descendants of them, or any of them, then to the father if he be living, if not, to the mother of the intestate; and if there be no children of the intestate, or descendants of such children, and no brothers or sisters, or descendants of them, nor father or mother, then such estate shall descend in equal parts to the next of kin to the intestate, in equal degree, computing by the rules of the civil law; and there shall be no representation among collaterals, except with the de-

scendants of the brothers and sisters of the intestate; and there shall in no case be a distinction between the kindred of the whole and half blood, except the kindred of the whole blood in equal degree shall be preferred to the kindred of the half blood in the same degree; saving to the widow of the intestate, in all cases, her dower. And where there shall be no children of such intestate, nor descendants of them, then the widow shall have as her dower, one-half of such before-mentioned estate of her deceased husband."

The corresponding provisions of the present law, to the extent here pertinent, are found in §§ 1, 2, 3, 4 and 5, Tit. 16, Code 1940, which, except for § 5, set out above, provide as follows:

"§ 1. Descent of real estate.—The real estate of persons dying intestate, as to such estate descends, subject to the payment of debts, charges against the estate, and the widow's dower, as follows:

\* \* \* \* \* \*

"(7) If there are no children or their descendants, no father or mother, no brothers or sisters or their descendants, and no husband or wife, then to the next of kin to the intestate, in equal degree, in equal parts.

\* \* \* \* \* \*

"§ 2. Lineal descendants take ancestor's share.—Under the provisions of the preceding section, the lineal descendants, in equal degree, represent their ancestor; that is, the children of a deceased child, brother or sister of the intestate, are entitled to inherit, in equal parts, the same share that such deceased child, brother, or sister would have inherited, if living; the grandchildren of such deceased child, brother, or sister, taking in equal parts the same share that their parents would have inherited, if living.

"§ 3. No representation among collaterals; exception.—There is no representation among collaterals, except with the descendants of the brothers and sisters of the intestate.

"§ 4. Kindred computed by civil law.—The degree of kindred must be computed according to the rules of the civil law."

It can readily be seen that the statutory provisions considered in Deloney v. Walker, supra, with respect to the right of an intestate's aunts and uncles to inherit from him, are, in material respects, the same as the present provisions. We might well rest our decision on that case, except for the wording of § 5, supra, particularly the last clause of that section which begins with the phrase "in which case". Let us see to what extent § 5 should be construed as changing the controlling principle of the statute of descents, recognized in Deloney v. Walker, that an intestate's next of kin, whether of the blood of his ancestor or not, inherit his ancestral estate.

■ Section 5, supra, is part and parcel of the legislative scheme establishing rules of descent and must be construed with reference to such related statutory provisions. Mostilla v. Ash, 234 Ala. 626, 629, 176 So. 356.

■ The section first provides, in effect, that kindred of the half blood inherit equally with those of the whole blood in the same degree. Obviously, this is an enlargement of the controlling principle, for, under the common law, kindred of the half blood were excluded, and this exclusion applied even though they were of the blood of the ancestor from whom the land came. The next provision, and in the same sentence with the provision placing kindred of the half blood on an equality with those of the whole blood, is the following exception or limitation to the general rule of equality: "unless the inheritance came to the intestate by descent, devise, or gift from or of some one of his ancestors; in which case all those who are not of the blood of such ancestor are excluded from the inheritance as against those of the same degree." Clearly, this section

treats only of kindred of the half blood, for it is their rights alone which are therein defined and limited. The first clause of the section, in clear and distinct language, affirmatively establishes the rule in favor of the half blood. What follows is a limitation or exception to that rule. And for us to say that the legislature intended to prescribe a new rule of inheritance in the clause expressly limiting the application of the general rule affirmatively given would, it seems to us, be contrary to the plain grammatical construction of § 5. *Unless* is used to introduce an exception to the right of the half blood. All that follows is dependent on it and qualified by it; and defines the exception to the rule stated in the first clause. *In which case* refers to the stated exception with respect to ancestral property. The exclusion is not of "all persons" but "all those", the relative pronoun "those" relating back and clearly signifying those of the half blood. That exclusion is strictly a limitation on the right of kindred of the half blood to inherit under the rule of § 1, Tit. 16, Code 1940, supra. But in this case there are no kindred of the half blood to be affected by the limitation of § 5. All of the aunts and uncles are of the whole blood to the intestate, in the same degree, and are entitled, therefore, to inherit the land in equal parts by virtue of the rule of descent prescribed by § 1, Tit. 16, supra.

Appellants, in support of their position, cite the following: Johnson v. Copeland's Adm'r, 35 Ala. 521; Cox v. Clark, 93 Ala. 400, 9 So. 457; Coleman v. Foster, 112 Ala. 506, 20 So. 509; and Purcell v. Sewell, 223 Ala. 73, 134 So. 476. In each of those cases there was involved the rights of next of kin of the half blood. As already noted, we are not here concerned with the rights of kindred of the half blood.

The decrees appealed from are due to be affirmed. It is so ordered.

Affirmed.

LIVINGSTON, C. J., and SIMPSON and MAYFIELD, JJ., concur.