John DE ROIN, Plaintiff in Error,

v.

John P. WHITETAIL, Norman De Roin, and W. N. Palmer, Administrator of the Estate of Mildred De Roin, Deceased, Defendants in Error.

No. 36058.

Supreme Court of Oklahoma.

May 28, 1957.

Rehearings Denied July 2, 1957.

Luttrell & Luttrell, Norman, T. F. Dukes, Hominy, Hamilton & Kane, Pawhuska, for plaintiff in error.

Frank T. McCoy, John T. Craig, and Robert P. Kelly, Pawhuska, for defendants in error.

WILLIAMS, Justice.

This is an appeal from a judgment of the district court of Osage County affirming the order of the County Court of Osage County, determining the heirs and distributing the assets in the estate of Mildred DeRoin, deceased.

The facts were all stipulated in the district court. Mildred DeRoin died intestate, unmarried and without issue, leaving as her only surviving relatives, a paternal half-brother, Norman DeRoin, a paternal grandfather, John DeRoin, and a maternal half-uncle, John P. Whitetail. That portion of decedent's estate involved in this appeal consisted of property devised to decedent by her maternal grandmother and property inherited from her mother, which property the probate court distributed to John P. Whitetail, the maternal half-uncle, to the

exclusion of both Norman DeRoin, the half-brother, and John DeRoin, the paternal grandfather. On appeal to the district court such decree of distribution was affirmed on the theory that both the half-brother and the paternal grandfather are excluded from inheriting such property by the so-called "half-blood statute", 84 O.S. 1951, § 222, and that the maternal half-uncle, as the only person related by blood to the ancestors from whom the property came to decedent, was entitled to take such property. No appeal has been perfected by the half-brother, Norman DeRoin, and as to him the decree has become final. The paternal grandfather, John DeRoin, has perfected this appeal and thereby presents the question of whether the property which came to decedent from her mother and maternal grandmother should go to the paternal grandfather, a full-blood relative of the deceased in the second degree, but who is not of the blood of the transmitting ancestors, or the maternal half-uncle, a relative of the deceased in the third degree, but who is of the blood of the transmitting ancestors.

The statute above referred to, 84 O.S. 1951 § 222, reads as follows:

> "Kindred of the half-blood inherit equally with those of the whole blood in the same degree, unless the inheritance come to the intestate by descent, devise or gift of some one of his ancestors, in which case all those who are not of the blood of such ancestors must be excluded from such inheritance."

Both parties to this appeal contend and agree that the effect of the foregoing statute is to exclude the half-brother, Norman DeRoin, from the so-called ancestral property here involved and that the trial court was correct in so holding. They disagree, however, as to the disposition to be made of the property from which the half-brother is excluded. Appellant grandfather contends that the above quoted statute operates to exclude only kindred of the half-blood who are not of the blood of the transmitting ancestor, and that the court

erred in holding that appellant was excluded thereby; that appellant, as lineal kindred of the decedent in the second degree, is entitled to inherit as next of kin under 84 O.S.1951 § 213, subdivision 6, in preference to appellee, a collateral kindred of decedent in the 3rd degree. Appellee, on the other hand, seeks to uphold the trial court's interpretation that the above quoted statute has the effect of excluding all kindred who are not of the blood of the transmitting ancestor and not just all kindred of the half-blood who are not of the blood of the transmitting ancestor.

The above quoted half-blood statute has been considered by this court in Hill v. Hill, 58 Okl. 707, 160 P. 1116; O'Neill v. Lauderdale, 80 Okl. 170, 195 P. 121; McKay v. Roe, 96 Okl. 87, 219 P. 921; Thompson v. Smith, 102 Okl. 150, 227 P. 77; Gray v. Chapman, 122 Okl. 130, 243 P. 522; Cooper v. Spiro State Bank, 137 Okl. 265, 278 P. 648, with a dissenting opinion at 279 P. 903; Zweigel v. Lewis, 139 Okl. 171, 281 P. 787; In re Yahola's Heirship, 142 Okl. 79, 285 P. 946; Moffett v. Conley, 63 Okl. 3, 163 P. 118; Bates v. Huddleston, 146 Okl. 259, 293 P. 1047; In re Moran's Estate, 174 Okl. 507, 51 P.2d 277, 103 A.L.R. 227; and In re Long's Estate, 180 Okl. 28, 67 P.2d 41, 44, 110 A.L.R. 1002. In none of such cases was there any contention made that such statute excluded any kindred other than kindred of the half-blood. In the opinion in In re Long's Estate, supra, however, the court analyzed and reviewed the provisions of such statute and in so doing, said:

> "It is important to observe that there is no requirement in the section that the whole blood kindred to decedent must, in order to inherit, be of the blood of decedent's ancestor; for the devolution to those of the whole blood is governed by section 1617 (the second subdivision in this case), which section does not look to the source of decedent's title. Zweigel v. Lewis, 139 Okl. 171, 281 P. 787."

The contention that such statute also excludes whole blood kindred of the decedent

who are not of the blood of the transmitting ancestor has, however, been presented to the courts of other states having the same or virtually the same half-blood statute as long ago as 1877 and as recently as 1955. In all of such cases it was uniformly held that such statute could not possibly exclude whole blood kindred of the decedent and that it applied only to kindred of the half-blood. The most recent of such cases is that of Caffee v. Thompson, 262 Ala. 684, 81 So.2d 358, 362, decided June 16, 1955, in which the Supreme Court of Alabama, in construing Section 5, Title 16, Alabama Code 1940, said:

"Section 5, supra, is part and parcel of the legislative scheme establishing rules of descent and must be construed with reference to such related statutory provisions. Mostilla v. Ash, 234 Ala. 626, 629, 176 So. 356.

"The section first provides, in effect, that kindred of the half blood inherit equally with those of the whole blood in the same degree. Obviously, this is an enlargement of the controlling principle, for, under the common law, kindred of the half blood were excluded, and this exclusion applied even though they were of the blood of the ancestor from whom the land came. The next provision, and in the same sentence with the provision placing kindred of the half blood on an equality with those of the whole blood, is the following exception or limitation to the general rule of equality: 'unless the inheritance came to the intestate by descent, devise, or gift from or of some one of his ancestors; in which case all those who are not of the blood of such ancestor are excluded from the inheritance as against those of the same degree.' Clearly, this section treats only of kindred of the half blood, for it is their rights alone which are therein defined and limited. The first clause of the section, in clear and distinct language, affirmatively establishes the rule in favor of the half blood. What follows is a limitation or exception to

that rule. And for us to say that the legislature intended to prescribe a new rule of inheritance in the clause expressly limiting the application of the general rule affirmatively given would, it seems to us, be contrary to the plain grammatical construction of § 5. *Unless* is used to introduce an exception to the right of the half blood. All that follows is dependent on it and qualified by it; and defines the exception to the rule stated in the first clause. *In which case* refers to the stated exception with respect to ancestral property. The exclusion is not of 'all persons' but 'all those', the relative pronoun 'those' relating back and clearly signifying those of the half blood. That exclusion is strictly a limitation on the right of kindred of the half blood to inherit under the rule of § 1, Tit. 16, Code 1940, supra."

In the case of In re Estate of Kirkendall, 43 Wis. 167, decided by the Supreme Court of Wisconsin in 1877, that court said:

"If the respondent is excluded from the inheritance, she is so excluded by virtue of Sec. 4 of the same chapter, which reads as follows: 'The degrees of kindred shall be computed according to the rules of the civil law; and kindred of the half blood shall inherit equally with those of the whole blood, in the same degree, unless the inheritance came to the intestate by descent, devise or gift of some one of his ancestors, in which case all those who were not of the blood of such ancestor shall be excluded from such inheritance.'

"It is claimed on behalf of the appellants, that this section excludes from the inheritance of ancestral estate all kindred of the intestate who are not of the blood of the ancestor from whom the estate came, without regard to the degree of kinship. This construction excludes the respondent, who is not of the blood of the ancestor.

"On the other hand it is claimed on behalf of the respondent, that the rule of exclusion of the section is only applicable to cases where the next of kin to the intestate are of the half blood of the intestate, and not of the blood of the ancestor. This construction gives the estate to the respondent, who, although not of the blood of the ancestor, is not of the half blood of the decedent.

"The learned counsel for the appellants has argued with much ability that the leading idea, the foundation principle, of our statute of descents is to confine the descent of ancestral estates to those who are of the blood of the ancestor from whom the same descended. We cannot adopt this view. We find nothing in the statute to sustain it, except the last clause of Sec. 4, which was inserted by way of exception to, or limitation of, the preceding clause. To ascertain the controlling principle of a statute, we must look to the body of it—to its general provisions —rather than to a mere exception to one of its provisions. Looking then to the whole statute—considering it in the light of all its general provisions— it seems very clear to us that its leading, controlling principle is not that intestate ancestral estate shall descend only to those who are of the blood of the ancestor from whom it came; but it is that, where no other provision is made, the same shall descend to the next of kin to the intestate, whether of the blood of such ancestor or not. Sec. 4 must be interpreted with reference to this principle.

"After enacting the rule for ascertaining the degrees of kindred, to-wit, the rule of the civil law, the section provides that kindred of the half blood shall inherit equally with those of the whole blood in the same degree. This, with perhaps other provisions of the statute, enlarges the application of the principle above stated; for, by the common law, all kindred of the half blood,

whether of the blood of the ancestor from whom the estate was derived or not, were excluded from the inheritance. 2 Bl.Com. (Cooley's Ed.) 224, 231. Following this provision, and in the same sentence, is the exception or limitation before mentioned, preceded by the word unless.

"The first clause of the section, which contains the rule for computing degrees of kindred, does not aid the construction of the balance of the section. For that purpose it might as well have constituted a section by itself. The remainder of the section treats only of kindred of the half blood. Their rights and theirs alone are therein defined and limited; and we find nothing in the language of the section which authorizes us to say that any other class of kindred is within its purview. We think the plain grammatical construction of the clauses under consideration is, that kindred of the intestate of the half blood shall inherit equally with those of the whole blood in the same degree, in all cases, except that if the estate is ancestral, only such kindred of the half blood as are of the blood of the ancestor from whom the estate came, shall inherit. We find here no other limitation of the rule of subdivision 6, Sec. 1, that 'if the intestate shall leave no issue, nor widow, and no father, mother, brother nor sister, his estate shall descend to his next of kin in equal degree,' etc."

Likewise, the Supreme Court of California, in the case of In re Pearsons' Estate, 110 Cal. 524, 42 P. 960, 961, decided in 1895, said:

"Respondents' whole contention rests upon the theory that section 1394 [West's Ann.Cal.Prob.Code, § 254] changes the rule of section 1386 [West's Ann.Cal.Prob.Code, § 226] above quoted. But to see the mistake of that theory it is only necessary to observe that section 1394 deals entirely with the case of kindred of 'the half blood,' not with kindred of the whole

blood, whose rights had already been fixed by section 1386. Section 1394 is as follows: 'Kindred of the half blood inherit equally with those of the whole blood in the same degree, unless the inheritance came to the intestate by descent, devise, or gift of some one of his ancestors, in which case all those who are not of the blood of such ancestor must be excluded from such inheritance.' Here the words 'all those' clearly refer to their antecedents in the sentence 'kindred of the half blood.' 'Kindred of the half blood' being the subject of the main proposition of the section, is necessarily the subject of the exception which follows the word 'unless.' The section simply means that kindred of the half blood shall inherit equally with those of the whole blood, except in a certain case, and in that case kindred of the half blood shall not inherit. And who are kindred of the half blood? Why, of course, kindred of the half blood of the decedent. There were none such in the case at bar. If the next of kin of equal degree of the intestate be some of the whole blood and some of the half blood of the intestate, the half blood shall not inherit if they are not of the blood of the person from whom the intestate inherited the property to be distributed; but, if all be kin of the whole blood of the intestate, or if the half bloods be of the blood of the ancestor, then all share alike. Kindred of the whole blood, if next of kin, share in all of the estate of the decedent, no matter from what source it came."

Appellee suggests that there were no half-blood kindred involved in the above quoted cases and that the language of the opinions quoted is therefore merely dicta. It is true that there were no half-blood kindred involved in these cases, but the quoted language is not dicta. The question presented in those cases was whether the half-blood statute operated to exclude kindred of the whole blood who were not of the blood of the transmitting ancestor, which is the identical question presented by this appeal.

■ Appellee concedes that if there had been no half-brother in the case at bar, appellant grandfather, as next of kin, would have inherited the so-called ancestral property, even though not of the blood of the transmitting ancestor, as against appellee, a more distant relative but of the blood of the transmitting ancestor. But appellee insists that because there is a half-brother in existence here, his existence brings into play the half-blood statute above referred to and operates to exclude the appellant grandfather as well as the half-blood brother. Such contention is in effect a contention that the phrase "all those who are not of the blood of such ancestors must be excluded" in the above quoted statute has two different meanings; that in cases where there are *no* kindred of the half-blood it means that all kindred *of the half-blood,* who are not of the blood of the ancestor, shall be excluded, but that in cases where there *are* kindred of the half-blood it means that all *kindred* (including those of the whole blood), who are not of the blood of the ancestor, shall be excluded. Such an interpretation is without justification in the language of the statute and is wholly without logic. Furthermore, it has been specifically rejected by the only court to which such a contention has been previously made, so far as we can determine, in the case of In re Ryan's Estate, 21 Cal.2d 498, 133 P.2d 626, 633, in which the court said:

"Amici curiae urge that on the facts of this case maternal whole blood cousins, as well as maternal half blood cousins, should be excluded from paternal ancestral property; that paternal cousins succeed to paternal ancestral property; maternal cousins to maternal property. In the Pearsons case, supra, there were aunts and uncles of the decedent, both paternal and maternal, all of the whole blood. It was

held that all shared equally in ancestral property. Amici curiae contend that although the Pearsons case was correctly decided under section 1394, Civil Code (now § 254, Prob.Code), a different rule would apply had there been a half blood relative. Had there been a maternal uncle of the half blood, for instance, the maternal aunts and uncles would be excluded from paternal ancestral property, in the analysis of amici curiae. Thus amici curiae contend for an extension to whole blood kindred in certain circumstances of the rule of descent based on origin of property. The extension of the rule in the analysis of amici curiae is to depend on the irrelevant circumstance of whether there are half blood, as well as whole blood, kindred.

"This construction cannot be accepted. It is based on a theory that if the phrase 'those who are,' concluding section 254, refers to all those who are of the blood of the ancestor, both half blood and whole blood of the decedent, then the preceding 'those' must have the same reference. This by necessary implication changes the rule of the Pearson case, which held that the phrase 'all those who are not' appearing in the section refers to half blood only and excludes only them. The limitation which amici curiae place on their construction excluding whole bloods—that it should apply only where there is a half blood relative—finds no justification in the language of the section.

"We conclude that the maternal half blood cousins are excluded from paternal ancestral property, which is to be divided equally between the four cousins of the whole blood and the paternal cousins of the half blood; that the paternal cousins of the half blood are excluded from maternal ancestral property, which is to be distributed to the four full blood cousins and the maternal half blood cousins."

■ We conclude that the trial court erred in holding that the paternal grandfather of decedent was excluded from inheriting so called ancestral property from such decedent by virtue of the above quoted statute.

The judgment is reversed and the cause remanded with instructions to render judgment in accordance with the views herein expressed.

WELCH, C. J., CORN, V. C. J., and BLACKBIRD and JACKSON, JJ., concur.

DAVISON, J., concurs in result.

JOHNSON and HALLEY, JJ., dissent.

HALLEY, Justice (dissenting).

This case is very important in my opinion for the reason I believe the majority is upsetting a rule of property which has been followed in Oklahoma since Statehood. At least it has been the law in this State since May 13, 1924, when rehearing was denied in the case of Thompson v. Smith, 102 Okl. 150, 227 P. 77. The fourth paragraph of the syllabus in that case is as follows:

"Section 8427, Revised Laws 1910 (section 11310, Comp.Stat.1921), provides: 'Kindred of the half-blood inherit equally with those of the whole blood in the same degree, unless the inheritance come to the intestate by descent, devise or gift of some one of his ancestors, in which case all those who are not of the blood of such ancestors must be excluded from such inheritance.' Held, said section qualifies the general rule as to inheritance by those of the half blood found in second subdivision of section 8418, Revised Laws 1910 (section 11301, Comp. Stat.1921), and the half blood is excluded from an inheritance that came to the deceased by descent, devise or gift of some one of his ancestors, and that the rule announced in Kelly's Heirs v. McGuire, 15 Ark. [555] 586, be followed."

This is now section 222, 84 O.S.1951. We said in that case:

> "It is plain from the language used in section 8427, supra, that, where the inheritance ccmes to the intestate by descent, devise or gift, it was intended in such cases in providing for the devolution of such an estate, where there are kindred of the half blood, to exclude all those who are not of the blood of such ancestor from whom such an estate had come. Then the estate goes to those kindred nearest in blood to the deceased and of the blood of the ancestor from whom such estate came."

This case plainly holds that where there are kindred of the half blood, both those of the half blood and those of whole blood of the deceased who were not of the blood of the ancestor from whom deceased received the property could not take. It has not been overruled.

As heretofore shown, this opinion also approves the case of Kelly's Heirs v. McGuire, 15 Ark. 555. In that case it was said that if the inheritance was ancestral and come from the father's side, then it will go to the line on the part of the father, from whence it came, not in postponement but in exclusion of the mother's line; and, so on the other hand if it comes from the mother's side, then to the line on the part of the mother, to the exclusion of the father's line.

In their discussion of the 12th section of the Arkansas Law on descent and distribution on the half-blood provision which is practically the same as ours the Supreme Court had this to say in this Kelly's Heirs v. McGuire:

> "It has been contended, with much ability and ingenuity, that the restriction in the latter clause of the section, applies to the descendants of the half-blood only; and that such is the grammatical and logical construction.

> "But we are unable to subscribe to this argument. It would be unsafe to construe a statute according to mere grammatical rules, or to rely on punc-

tuation, as any material aid, in ascertaining the true meaning. Neither bad grammar nor bad English, will vitiate a statute any more than a deed. It is well known that ancient statutes were without sections or punctuation, and hence the reasonable and universal rule that the sense must be collected from the whole act.

> "It is clear that the meaning and intention of this section was to prohibit the half-blood, and their descendants alike, from sharing in the inheritance of an estate which might come to the intestate by descent, devise, or gift, from an ancestor; in all cases, where they were not of the blood of such ancestor. The reason for excluding the half-blood, is just as strong as for excluding their descendants, and it is impossible to conceive any well founded distinction between the two. And whatever opinion we might entertain, as to the hardships of such a rule, in any given case, or as to the impolicy of establishing lines of blood at all, in a new country, where almost every man is the architect of his own fortune and the stock of descent; yet the Legislature has spoken its will; the language is too plain to be doubted, and addresses a prohibition to the courts, not to be disregarded or evaded."

This provision, as does ours, comes from New York. Ours through Dakota Territory by the way of the Field Code.

The estate involved in this case is ancestral. We have recognized ancestral estates in Oklahoma in several cases. One of the last is In re Moran's Estate, 174 Okl. 507, 51 P.2d 277, 103 A.L.R. 227. In Hill v. Hill, 58 Okl. 707, 160 P. 1116, we referred to an ancestral estate and held that those of the half-blood did not inherit an ancestral estate. This case was reversed on other grounds but not on the point under consideration.

We held "flat and dry" in Gray v. Chapman, 122 Okl. 130, 243 P. 522, 523, that

ancestral estates could not be inherited by "those of the half-blood who were not of the blood of the ancestor." Under the definition of an ancestral estate as given in that case, this would be such. We changed the rule in the In re Yahola's Heirship case, 142 Okl. 79, 285 P. 946, when we held that land allotted to a member of the Creek Nation was not an ancestral estate but a new acquisition. But this holding in no way affected the decision as to the inheritance of ancestral estates.

There is a comprehensive note in 141 A.L.R. 976, dealing with this question. Our Court is definitely classed as one of those states that does not let those who are not of the blood of the ancestor from whom decedent received property through inheritance take such ancestral property under the laws of descent and distribution from the decedent.

In New York those of the half-blood were formerly always excluded from an ancestral estate when they were not of the blood of the ancestor, regardless of degree. There has been a statutory change there.

In Thompson v. Smith, supra, we have followed Arkansas on the proposition that those not of the blood of the ancestor in ancestral estates do not inherit. So we have held in the following cases: Hill v. Hill, supra; Thompson v. Smith, supra; Gray v. Chapman, supra; Zweigel v. Lewis, 139 Okl. 171, 281 P. 787; In re Moran's Estate, supra, and In re Long's Estate, 180 Okl. 28, 67 P.2d 41, 110 A.L.R. 1002, that those who were half-blood kindred of the decedent could not take any part of the ancestral estate when they were not of the blood of the ancestor.

In my opinion even if we had not early adopted the Arkansas view a sound interpretation of section 222 would necessitate the holding that those who were not of the blood of the ancestor, but otherwise related to the decedent by blood would not inherit. The language says "Kindred of the half-blood inherit equally with those of the whole blood in the same degree." Kindred of the half and the whole blood are being considered so the words "in which case all those" refer to both those of the whole blood as well as those of the half blood.

Actually in my opinion the paternal grandfather is less than a half-blood relation of the decedent in this case. If Norman was a half-blood relation of Mildred's, the grandfather was bound to be of less blood because Mildred's father carried half the blood of the grandfather, John DeRoin, and Norman and Mildred would only carry one-fourth of the blood of the grandfather.

I submit that the source of the property controls in the descent of an ancestral estate and when it does either a grandparent on one side of the family, or an uncle or aunt on the other side, excludes the other where he or she is in the line from which the property came. Gillespie v. Foy, 40 N.C. 280; Latimer v. Rogers, 40 Tenn. 692 and 26A C.J.S. Descent and Distribution, § 36.

Also in Thompson v. Smith, supra, we refused to follow the California Supreme Court on this question. In that case we quoted with approval from the Utah case of Amy v. Amy, 12 Utah 278, 42 P. 1121, which criticised the holding of the Michigan and Wisconsin Courts which were similar to California and Alabama. To me it is very unreasonable to hold that our Legislature intended to adopt a statute which would put a grandfather ahead of a decedent's half-brother when clearly the half-brother carried more of the same blood of the decedent than did the grandfather.

Since we have so firmly established the principle that those of the half blood cannot inherit in a case like this and go along with the Arkansas rule why cannot we let well enough alone and leave the change of rules of property to the Legislature which should be chary about changing our fundamental rules of property.

I dissent.