[No. 36941.    En Banc.    November 19, 1964.]

*In the Matter of the Estate of* H. A. KURTZMAN.
PEOPLES NATIONAL BANK OF WASHINGTON *et al., Respondents,* v. PHILIP A. SCHAEFFER *et al., Appellants.**

*Reported in 396 P. (2d) 786.

*Fitch & Fitch, Harry M. Cross,* and *Hennings, Maltman & Weber,* for appellants.

*Williams, Cole & Kinnear, Kenneth A. Cole,* and *Stanley B. Allper,* for respondents.

WEAVER, J.—At the time of his death H. A. Kurtzman was the owner of 1,499 shares of the capital stock of the James Henry Packing Company and of certain furniture, all of which had been bequeathed to him by his aunt, Sophia Braman Henry, his mother's sister.

Decedent, who died intestate, was not survived by spouse, issue, parents, brothers, sisters, nieces, nephews, grandparents, uncles or aunts, nor was he survived by any kindred of the half blood. He was survived by nine paternal first cousins (respondents)[1] who are of the fourth degree of kinship, all descendants of his paternal grandparents (the Kurtzman blood line); and (b) by two maternal first cousins once removed (appellants) who are of the fifth degree of kinship, descendants of his maternal grandparents (the Braman blood line). Sophia Braman Henry, who bequeathed the specific property in question to decedent, was the great aunt of appellants and their grandmother by her adoption of their mother.

For simplicity, we set forth the following genealogy chart.

---

[1] The administrator, the Peoples National Bank, is respondent. For clarity, we have designated the nine first cousins as respondents.

In response to a petition for the determination of heirship, appellants claimed the right to inherit the property which had been bequeathed to decedent by Sophia Braman Henry.

Appellants appeal from an order declaring that they are not heirs of decedent and are not entitled to inherit from his estate.

Basically, appellants argue that they are entitled to inherit the property bequeathed to decedent by his maternal aunt by reason of Laws of 1945, chapter 72 (RCW 11.04-.100). Appellants' claim to this personal property was presented to the trial court upon the theory that the 1945 statute establishes the ancient common law doctrine of "ancestral property" thus keeping ownership of the corporate stock and furniture in the blood line of the perquisitor, Sophia Braman Henry.

For clarity, we separate and designate the clauses of RCW 11.04.100 as follows:

1. "The degree of kindred shall be computed according to the rules of the civil law, and"

2. "the kindred of the half blood shall inherit equally with those of the whole blood in the same degree,"

3. "unless the inheritance comes to the intestate by descent, devise, or gift from one of his ancestors, or kindred of such ancestor's blood, in which case all those who are not of the blood of such ancestors shall be excluded from such inheritance:  . . ."

The first two clauses of RCW 11.04.100, which form a compound sentence, are of ancient lineage. They were adopted by the first territorial legislature (Laws of 1854, chapter 11, § 235, p. 307).[2] The statute remained unchanged until 1945, when it was reenacted with the addition of clause 3 *supra* by Laws of 1945, chapter 72.

Appellants present the issues of law thus:

1. "Did the Washington legislature, by chapter 72, Laws of 1945, intend to establish a preference in favor of the kin-

---

[2]They were reenacted by Laws of 1859-60 (7th Ses.) chapter 14, § 309, p. 222; Laws of 1863 (10th Ses.) chapter 17, § 343, p. 263; Laws of 1875, § 6, p. 56; and appear in the Code of 1881, chapter 253, § 3307, p. 576.

dred of ancestors devolving property upon decedents?"

2. "Would such a preference modify the inheritance pattern set up by RCW 11.04.020 (6) and 11.04.030 (3) as to the general class of next of kin?"

3. "Would such a legislative preference in favor of the kindred of devolving ancestors apply to both real and personal property?"

Respondents restate the issue as follows:

"In enacting the amendment by chapter 72, Laws of 1945, did the legislature intend to create a preference for decedent's heirs who were of the blood of the perquisitor (as claimed by appellants), or did the legislature intend the amendment as a *limitation* on the right of half bloods to inherit (as found by the court)?"

We find respondents' statement of the issue more precise for it pinpoints the problem of whether the legislature in 1945 intended (a) to revamp the entire scheme of descent and distribution in this jurisdiction to encompass the doctrine of ancestral property, or (b) to limit the right to inherit by those who are of the half blood. It is undisputed that there are no kindred of the half blood surviving the intestate.

■ Our problem is one of statutory interpretation. The fundamental object of judicial construction or statutory interpretation is to ascertain, if possible, and to give effect to, the intention of the legislature in enacting a particular statute (*Martin v. Aleinikoff*, 63 Wn. (2d) 842, 389 P. (2d) 422 (1964)); and in doing so, our first resort is to the context and subject matter of the legislation " . . . because the intention of the lawmaker is to be deduced, if possible, from what it said." *Lynch v. Department of Labor & Industries*, 19 Wn. (2d) 802, 806, 145 P. (2d) 265 (1944).

The original statute contained two relatively unrelated subjects—the method of computing kinship (clause 1), and the inheritance rights of kindred of the half blood (clause 2). They were expressed in a compound sentence, the two clauses being joined by the conjunction "and," but separated by a comma.

*First:* Appellants argue that the "unless" clause (clause

3) modifies clause 1, so that the statute would read as follows:

"The degree of kindred shall be computed according to the rules of the civil law, . . . unless the inheritance comes to the intestate by descent, devise, or gift from one of his ancestors, or kindred of such ancestor's blood, in which case all those who are not of the blood of such ancestors shall be excluded from such inheritance: . . ."

Both parties seem to agree that had a period or a semicolon been placed after the first clause of RCW 11.04.100, there would be no question for us to resolve. We note that in nearly every state having a similar statute a period or semicolon is placed after that part dealing with the computation of the degree of kindred (clause 1) or it is embodied in a separate section of the statutes of descent. We do not believe, however, that a problem of this moment should be decided solely by rules of punctuation. There are more cogent rules of statutory construction.

■ Appellants' interpretation ignores the rule announced in *Davis v. Gibbs,* 39 Wn. (2d) 481, 236 P. (2d) 545 (1951), in which we said:

"Where no contrary intention appears in a statute, relative and qualifying words and phrases, both grammatically and legally, refer to the last antecedent." (See supporting authorities.)

The last antecedent is the last word, phrase or clause that can be made an antecedent without impairing the meaning of the sentence.

■ Application of this rule to the instant case leads to the conclusion that the restrictive, adverbial clause introduced by "unless the inheritance . . ." refers to and modifies the second clause "the kindred of the half blood shall inherit equally with those of the whole blood in the same degree" which, of course, is the last antecedent that can be used without impairing the meaning of the sentence. It is the rights of kindred of the *half blood* alone that are defined and limited, not the method of determining the degree of kindred. We find no express legislative intent to the contrary.

■ Our conclusion is fortified by reference to the title of Laws of 1945, chapter 72. It is a well-recognized rule of statutory construction that the title of the act may be resorted to as one of the means of ascertaining legislative intent. *Ayers v. Tacoma,* 6 Wn. (2d) 545, 556, 108 P. (2d) 348 (1940).

The title to the amendatory act is as follows:

"AN ACT relating to the descent of property, the computation of the degree of kindred [clause 1], the right to inherit amongst kindred of the half blood [clause 2] except in cases where the inheritance came to the intestate from an ancestor, and excluding those not of the blood of such ancestor [clause 3]; and amending section 1347, Remington's Revised Statutes, also Pierce's Perpetual Code 199-17."

The amendatory portion introduced by the word "except" is attached to ". . . the right to inherit amongst kindred of the half blood . . ." and is not separated therefrom by punctuation.

The statute itself, as distinguished from its title, follows the same format with two exceptions. The amendatory portion is introduced by the word "unless" instead of "except," a distinction to which we attach no importance, and is separated from the preceding clause by a comma.

The intent of the legislature becomes clear from the title. The "unless" clause is clearly separated from clause 1, which deals with the computation of the degree of kindred and is clearly subordinate to clause 2, which deals with the rights of inheritance between whole and half bloods.

Therefore, we find that it was the legislative intent to circumscribe the inheritance rights of only kindred of the half blood, in certain circumstances, and not to modify the method of computing kinship.

*Second:* Appellants argue that even if we determine that the "unless" clause does not modify the first clause dealing with the computation of the degrees of kinship, then the appellants still can prevail because the words "all those" in the "unless" clause refer to the word "kindred" in the

second clause. This contention is specifically refuted by the rationale of *Caffee v. Thompson*, 262 Ala. 684, 81 So. (2d) 358 (1955), wherein the court held that "all those" referred to "kindred of the *half blood*," not just to "kindred." The Alabama statute provides in a separate section that the degree of kindred is to be computed according to the rules of the civil law. Title 16, Code of 1940 [also Code of 1958], § 4. The next section of the statute provides:

"There is no distinction made between the whole and the half-blood in the same degree, unless the inheritance came to the intestate by descent, devise, or gift, from or of some one of his ancestors; in which case all those who are not of the blood of such ancestor are excluded from the inheritance as against those of the same degree." Title 16, Code of Alabama 1940 [also Code of 1958], § 5.

The Alabama court pointed out, however, that § 5 *supra* is part of the legislative scheme establishing rules of descent and must be construed with reference to related statutory provisions.

■ Refuting the same argument made by appellants in the instant case, the court said:

" . . . So, to answer the query we have only to decide whether § 5 [which is substantially the same as clause 2 and clause 3 of RCW 11.04.100] excludes from the inheritance of ancestral land all kindred of the intestate in the same degree who are not of the blood of the ancestor from whom the land came to the intestate.

" . . .

"The section first provides, in effect, that kindred of the half blood inherit equally with those of the whole blood in the same degree. Obviously, this is an enlargement of the controlling principle, for, under the common law, kindred of the half blood were excluded, and this exclusion applied even though they were of the blood of the ancestor from whom the land came. The next provision, and in the same sentence with the provision placing kindred of the half blood on an equality with those of the whole blood, is the following exception or limitation to the general rule of equality: 'unless the inheritance came to the intestate by descent, devise, or *gift from or of some one of his ancestors*; in which case all those who are not of the blood of such ancestor are excluded from the inheritance as against

those of the same degree.' *Clearly, this section treats only of kindred of the half blood, for it is their rights alone which are therein defined and limited.* The first clause of the section, in clear and distinct language, affirmatively establishes the rule in favor of the half blood. *What follows is a limitation or exception to that rule. And for us to say that the legislature intended to prescribe a new rule of inheritance in the clause expressly limiting the application of the general rule affirmatively given would, it seems to us, be contrary to the plain grammatical construction of § 5. Unless* is used to introduce an exception to the right of the half blood. All that follows is dependent on it and qualified by it; and defines the exception to the rule stated in the first clause. *In which case* refers to the stated exception with respect to ancestral property. The exclusion is not of 'all persons' but 'all those', the relative pronoun 'those' relating back and *clearly signifying those of the half blood.* That exclusion is strictly a limitation on the right of kindred of the half blood to inherit under the rule of § 1, Tit. 16, Code 1940, supra. But in this case there are no kindred of the half blood to be affected by the limitation of § 5. All of the aunts and uncles are of the whole blood to the intestate, in the same degree, and are entitled, therefore, to inherit the land in equal parts by virtue of the rule of descent prescribed by § 1, Tit. 16, supra [which is comparable to RCW 11.04.020, *infra,* note 3]." (Italics ours.)

We conclude, therefore, that the Washington legislature, by Laws of 1945, chapter 72, did not intend to establish a preference in favor of kindred of ancestors devolving property upon decedents, but intended only a limitation on the right to inherit by those who are of the half blood. Since the instant case does not involve heirs of the half blood, the limitation is not applicable, and those entitled to inherit the specific property in question must be determined by those statutes of descent[3] that are unaffected by Laws of

---

[3]RCW 11.04.020(6). "If the decedent leaves no issue, nor husband, nor wife, and no father nor mother, nor brother, nor sister, *the estate must go to the next of kin,* in equal degree, excepting that when there are two or more collateral kindred in equal degree, but claiming through different ancestors, those who claim through the nearest ancestor must be preferred to those claiming through an ancestor more remote." (Italics ours.)

RCW 11.04.030(3). "The residue, if any, of the personal estate, shall be distributed among the same persons as would be entitled to the

1945, chapter 72. Computed according to the rules of the civil law (RCW 11.04.100), appellants are not the next of kin of decedent. This requires that the judgment of the trial court be affirmed.

*Third:* Our conclusion makes it unnecessary for us to discuss what effect, if any, Laws of 1945, chapter 72, might have upon other statutes of descent in this jurisdiction; should the right to inherit by those who are of the half blood be involved.

*Fourth:* It is not necessary for us to determine whether the limitation on the right to inherit by those of the half blood is confined to real property or encompasses personal property as in the instant case. We leave this question until another day. As Judge Smith said in *Des Moines v. West Des Moines,* 239 Iowa 1, 14, 30 N. W. (2d) 500, 507 (1948), "There will be time enough to bid the Devil 'good morrow' when we meet him."

The judgment is affirmed.

OTT, C. J., DONWORTH, ROSELLINI, HUNTER, HAMILTON, and HALE, JJ., concur.

HILL, J. (concurring in the result)—This case provides a field day for the grammarians; only the gerunds and gerundives failed to have a time at bat. I had intended to dissent, but all of the rules of construction seem to have been correctly applied, and the opinion moves in erudite and complex syntax[4] that turns all opposition into admiration.

Therefore, I must concur, albeit grudgingly, for I am satisfied that the legislature meant something other than the intricacies of construction indicate it meant. If the reader will turn to the illustrative chart and draw a red

---

real estate by RCW 11.04.010 through 11.04.050, 11.04.060, and 11.04.080 through 11.04.170, and in the same proportion as provided, excepting as herein further provided;"

RCW 11.04.100. "The degree of kindred shall be computed according to the rules of the civil law, . . ."

[4]The Tax Commission might well be interested in exploring the revenue possibilities in this tax.

(or any other distinctive color) line from Sophia (Braman) Henry to intestate, H. A. Kurtzman, the source of the property which we are here distributing will be made clear. It came from Sophia by bequest to her nephew, H. A. Kurtzman.

In my opinion, the legislature had the rather reasonable idea that under such circumstances, if the person who received such a bequest died intestate, the portion of the bequest still identifiable should go to the kindred of the testator making the bequest (remain in the family so to speak), and specifically excluded from sharing therein any heirs of the intestate not of that blood.

If such was the intent of the legislature, the grammar used defeated that purpose. This concurrence is written to bring this specific situation to the attention of the legislature and to suggest the desirability of adding a grammarian to its technical staff.

FINLEY, J., concurs with HILL, J.